Bradley J. Schlozman
Acting Assistant Attorney General
Civil Rights Division
Steven H. Rosenbaum, Chief
Keisha Dawn Bell, Deputy Chief
Kenneth D. Johnson (DC#428458)
Joseph Gaeta (RI#6477)
Trial Attorneys
Housing and Civil Enforcement Section
Civil Rights Division, U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, D.C. 20530
202-514-6781, 202-514-1116 (fax)

Daniel G. Bogden, United States Attorney
Greg Addington, Assistant United States Attorney
(NV#6875)
100 W. Liberty Street, Ste. 600
Reno, NV 89501
775-784-5438, 775-784-5181 (fax)

Attorneys for Plaintiff United States of America

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | Case No. CV-N-04-0292-LRH-VPC |
| | – consolidated with – |
| | Case No. CV-N-04-0397 |
| v. | |
| | |
| SHARLANDS TERRACE LLC, et al., Defendants | UNITED STATES' MOTION FOR PROTECTIVE ORDER PERMITTING ENTRY ONTO PROPERTY |
| SILVER STATE FAIR HOUSING COUNCIL, INC., et al., Plaintiffs, | |
| | |
| v. | **EXPEDITED HEARING REQUESTED** |
| SHARLANDS TERRACE LLC, et al., Defendants. | |

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, Plaintiff United States hereby moves this Court to enter a protective order allowing its attorneys and agents to interview the tenants of the Sharlands Terrace Apartments. The United States has conferred with those

1   Defendants who currently own the subject property and certifies that the parties have been unable

2   to resolve this dispute without court action. Accordingly, the United States respectfully requests

3   this Court enter the proposed order that is attached. The reasons for the United States' motion

4   are more fully set forth in the accompanying memorandum.

5

6   Respectfully submitted,

7   BRADLEY J. SCHLOZMAN
    Acting Assistant Attorney General
8   Civil Rights Division

9

10

11   _____          Dated:        October 20 , 2005
     Steven H. Rosenbaum, Chief
12   Keisha Dawn Bell, Deputy Chief
     Kenneth D. Johnson (DC#428458)
13   Joseph Gaeta (RI#6477)
     Trial Attorneys
14   Housing and Civil Enforcement Section
     Civil Rights Division
15   U.S. Department of Justice
     950 Pennsylvania Ave., NW
16   Washington, D.C. 20530
     202-353-9062, 202-514-1116 (fax)

17   Daniel G. Bogden, United States Attorney
18   Greg Addington, Assistant United States Attorney
     (NV#6875)
19   100 W. Liberty Street, Ste. 600
     Reno, NV 89501
20   775-784-5438, 775-784-5181 (fax)

21   Attorneys for Plaintiff United States of America

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2       I hereby certify that, on October 20 , 2005, I mailed, by regular mail, a true and correct copy of Plaintiff United States' Motion for Protective Order Permitting Entry Onto Property, to

3  the following:

4  Greg Addington, Esq.
Assistant United States Attorney

5  100 W. Liberty Street, Ste. 600
Reno, NV 89501

6  775-784-5438, 775-784-5181 (fax)

7  Attorney for Plaintiff United States of America

8  Christopher A. Brancart, Esq.
Brancart & Brancart

9  P.O. Box 686
Pescadero, CA 94060

10  650-879-0141, 650-879-1103 (fax)

11  Attorney for the Private Plaintiffs

12  Thomas W. Chaffee, Esq.
Pandell Law Firm, Inc.

13  1990 North California Boulevard, Suite 1010
Walnut Creek, CA 94596

14  925-974-1700, 925-974-1709 (fax)

15  Attorney for Defendants James Tibbens
    DBA San Joaquin Design Group

16

17  Michael J. Flynn, Esq.
Flynn, Williams, Wester & Hall, LLP
1099 E Street

18  San Rafael, CA 94901
415-482-9933, 415-482-9939 (fax)

19

20  Attorney for Cross-Defendants
    Thomas J. Finnegan, et al.

21

22  Suellen Fulstone, Esq.
Woodburn and Wedge
Sierra Plaza

23  6100 Neil Road, Suite 500
Reno, NV 89511-1149

24  775-688-3007, 775-688-3088 (fax)

25  Attorney for Defendants Windgate
    Apartments LP, 1930 Wright Street LLC,

26    5311 College Oak Drive LLC, 3859 Annadale
    Lane LLC, Sharlands Terrace Apartments I, LLC

27    and Sharlands Terrace Apartments II, LLC

28

Daniel T. Hayward, Esq.
Laxalt & Nomura, Ltd.
9600 Gateway Drive
Reno, NV 89521
775-322-1170, 775-322-1865 (fax)

Attorney for Defendant Jeff Codega
    Planning and Design, Inc.

Brian M. McMahon, Esq.
Hamilton & McMahon, Ltd.
577 California Avenue
Post Office Box 40638
Reno, NV 89504-4638
775-348-2700, 775-348-2745 (fax)

Attorney for Defendants
    Sharlands Terrace LLC,
    Blatt Development of Nevada, Inc., and
    Michael Blatt

Mr. Gilbert Orosco,
an individual d/b/a
H & S Mechanical
1762 Baldwin Lane
Stockton, CA  95215

In Pro Per

William E. Peterson, Esq.
Morris, Pickering & Peterson
6100 Neil Road, Suite 555
Reno, NV 89511
775-829-6000, 775-829-6001 (fax)

Attorney for Cross-Defendants
    Thomas J. Finnegan, et al.

Nicholas B. Salerno, Esq.
Lincoln, Gustafson & Cercos
1120 Town Center Drive, Suite 260
Las Vegas, NV 89134
702-257-1997, 619-257-2203 (fax)

Attorney for Third-Party
    Defendant The Roofing Limited
    Liability Co.

1
2
3

Gene J. Stonebarger, Esq.
Lindsay & Stonebarger
1107 9th Street, Suite 1020
Sacramento, California 95814
916-446-0032,  916-446-0034 (fax)

4
5

Attorney for Third-Party
  Defendant CJS Plumbing, Inc.

6
7

Gloria Sturman, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
415 S. Sixth Street
Las Vegas, NV 89101

8
9

Attorney for Third Party
  Defendant McKimmey Electric, Inc.

10
11

_____
Joseph Gaeta

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- 5 -

1  Bradley J. Schlozman
   Acting Assistant Attorney General
2  Civil Rights Division
   Steven H. Rosenbaum, Chief
3  Keisha Dawn Bell, Deputy Chief
   Kenneth D. Johnson (DC#428458)
4  Joseph Gaeta (RI#6477)
   Trial Attorneys
5  Housing and Civil Enforcement Section
   Civil Rights Division, U.S. Department of Justice
6  950 Pennsylvania Ave., NW
   Washington, D.C. 20530
7  202-514-6781, 202-514-1116 (fax)

8
   Daniel G. Bogden, United States Attorney
9  Greg Addington, Assistant United States Attorney
   (NV#6875)
10 100 W. Liberty Street, Ste. 600
   Reno, NV 89501
11 775-784-5438, 775-784-5181 (fax)

12
   Attorneys for Plaintiff United States of America
13

14              UNITED STATES DISTRICT COURT
15                   DISTRICT OF NEVADA

16 UNITED STATES OF AMERICA, Plaintiff,          )
                                                 )    Case No. CV-N-04-0292-LRH-VPC
17                                               )    – consolidated with –
                                                 )    Case No. CV-N-04-0397
18                       v.                       )
                                                 )
19                                               )    POINTS AND AUTHORITIES IN
   SHARLANDS TERRACE LLC, et al., Defendants )        SUPPORT OF UNITED STATES'
20 ─────────────────────────────────────────    )    MOTION FOR PROTECTIVE
                                                 )    ORDER PERMITTING ENTRY
21 SILVER STATE FAIR HOUSING                     )    ONTO PROPERTY
22 COUNCIL, INC., et al., Plaintiffs,            )
                                                 )
23                                               )
                       v.                        )    EXPEDITED HEARING
24                                               )    REQUESTED
   SHARLANDS TERRACE LLC, et al., Defendants. )
25 ─────────────────────────────────────────    )

26

27 I.    INTRODUCTION

28         Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, Plaintiff United States of

1  America hereby brings this motion for a protective order to prevent the current owners of

2  Sharlands Terrace Apartments, 6400 Sharlands Avenue, Reno, Nevada [the Subject Property]

3  from prohibiting or otherwise restricting access to the property by the United States for the

4  purpose of identifying and interviewing potential aggrieved persons.  The United States

5  respectfully requests this Court enter an order allowing the United States to interview tenants

6  without supervision or other intrusion by the current owners of the Sharlands Terrace

7  Apartments.

8  II.    PROCEDURAL BACKGROUND

9       In June 2004, the United States filed suit against Sharlands Terrace LLC, Blatt

10  Development, LLC, James Tibbens d/b/a San Joaquin Design Group, and Jeff Codega Planning

11  and Design [collectively, the Design/Construction Defendants] alleging violations of the design

12  and construction requirements of the Fair Housing Act [the FHA].  See 42 U.S.C. 3604(f)(3)(C).

13  In short, the United States has alleged that these defendants failed to design and construct the

14  Subject Property in a manner that is accessible to and usable by persons with disabilities.  The

15  United States has also alleged that the Design/Construction Defendants' actions constitute a

16  pattern or practice of discrimination against persons with disabilities.  This matter has been

17  consolidated with a lawsuit filed by Paul Babiak and Silver State Fair Housing Council [the

18  Private Plaintiffs], who have alleged comparable violations of the Fair Housing Act against the

19  Design/Construction Defendants.

20       Both the United States and the Private Plaintiffs have named Windgate Apartments LP,

21  1930 Wright Street LLC, 5311 College Oak Drive LLC, 3859 Annadale Lane LLC, Sharlands

22  Terrace Apartments I, LLC and Sharlands Terrace Apartments II, LLC [the Current Owner

23  Defendants] as defendants necessary for relief pursuant to Federal Rule of Civil Procedure 19.

24  The Current Owner Defendants are necessary for relief because they own the Subject Property

25  and physical retrofits will be necessary to remedy the alleged FHA violations.  Neither the United

26  States nor the Private Plaintiffs have alleged that the Current Owners are responsible for the

27  design and construction violations of the FHA.

28

- 2 -

1    Starting in September 2005, the parties entered into mediation to resolve the United

2    States' claims.  In an effort to identify individuals who may have been harmed by the allegedly

3    illegal design of the Subject Property, the United States has endeavored to work cooperatively

4    with the Current Owners to obtain access to the Subject Property to interview current residents.

5    After making a verbal request for access to the property on September 12, 2005, the United

6    States followed up with a request in writing to counsel for the Current Owner Defendants on

7    September 15, 2005.  See Letter from Kenneth D. Johnson to Suellen Fulstone (Exhibit A).

8    After receiving no response, the United States addressed a second request to counsel for the

9    Current Owners on September 28, 2005, further explaining the interviewing process and

10   proposing reasonable terms and conditions under which it would proceed.  See Letter from

11   Joseph Gaeta to Michael Flynn (Exhibit B).  On October 4, 2005, Mr. Flynn responded by

12   authorizing the United States to interview current residents only when accompanied by a monitor

13   representing the Current Owners.  See Letter from Michael Flynn to Joseph Gaeta (Exhibit C).

14   During the status conference held before this Court on October 12, 2005, Ms. Fulstone reiterated

15   the Current Owners' position, and the United States represented that the terms set by the Current

16   Owners were not acceptable.  The Design/Construction Defendants have not objected to the

17   United States' request.

18   III.    ARGUMENT

19   A.      The United States Has A Right and Responsibility to Enter the Subject Property To
             Interview Potential Victims.
20
             The United States is entitled to locate and identify aggrieved persons during discovery
21
     and post-complaint investigation of a FHA claim.  Under Section 814(a) of the Fair Housing Act,
22
     42 U.S.C. § 3614(a), the Attorney General is authorized to file suit on behalf of the United States
23
     if he has reasonable cause to believe that (1) any defendant or group of defendants is engaged in a
24
     "pattern or practice" of discrimination made unlawful under the Act, or (2) any group of persons
25
     has been denied these rights and such denial "raises an issue of general public importance."  If
26
     the United States proves a defendant's liability under § 3614, the Act clearly authorizes the court
27

28
                                            - 3 -

1   to award, *inter alia*, equitable relief and "monetary damages to persons aggrieved."[1]  42 U.S.C. §

2   3614(d)(1).  The House Report on the Fair Housing Act Amendments of 1988, makes this point

3   expressly:

4       Section 814(d) provides the types of relief a court may award in a civil action
        under this Section.  Existing preventive relief continues, as well as other
5       appropriate relief including monetary damages for the persons aggrieved.  The
        Committee intends that relief may be awarded to all persons affected by the
6       discriminatory housing practice.  Allowing the court to award monetary relief to
        persons aggrieved avoids later duplicative litigation as such persons bring actions
7       to vindicate their rights.

8   H.R. Rep. No. 711, 100th Cong., 2d Sess. at 40 (second emphasis added).  Although the Report

9   states that "Section 814(e) allows aggrieved persons to intervene in cases brought by the

10  Attorney General," id., the Act does not require such intervention for an aggrieved person to be

11  eligible for damages.  In other words, aggrieved persons need not become parties to receive

12  damages.  Furthermore, in United States v. Balistrieri, 981 F.2d 916 (7th Cir. 1992), cert. denied,

13  510 U.S. 812 (1993), the Court of Appeals rejected the argument that the United States was

14  limited to seeking damages for victims that it was aware of when the complaint was filed:

15      [T]he complaint was filed in response to the tests.  But nothing in the complaint
        supports the conclusion that the pattern or practice alleged was limited to those
16      acts.  The complaint did not limit the pattern to any particular dates, to any
        particular acts, or to acts against any particular people.  The government's
17      complaint notified the defendants of the claim against them;  the government
        properly proceeded to flesh out that claim through the discovery process . . . .  The
18      Fair Housing Act allows courts to award damages to persons aggrieved by a
        defendant's pattern of discrimination; nothing in the act demands, or even implies,
19      that damages are proper only for people the government knows about at the time it
        files its complaint.  The term "pattern or practice" itself implies an ongoing series
20      of acts; it would be asking next to the impossible to demand that the government
        know about every victim of that alleged pattern before filing a complaint.

21  981 F.2d at 935 (emphasis added).

22      Because the United States is not limited in seeking damages for individuals identified

23  after the complaint is filed, it follows that the United States must be permitted to use discovery

24  and post-complaint investigation to identify those individuals.  As a practical matter, eligibility

25

26  _____

27      [1]An "aggrieved person" is one who "claims to have been injured by a discriminatory
    housing practice" or one who believes that he or she "will be injured by a discriminatory housing
28  practice that is about to occur."  42 U.S.C. § 3602(i).

- 4 -

1   for a damage award by such persons depends on the action of the Attorney General identifying

2   them on a timely basis to the defendants, and presenting the facts regarding damages to the fact-

3   finder or, as here, addressing those claims in a settlement.[2]  The public interest is served by the

4   identification and compensation of all persons harmed by Defendants' alleged illegal conduct.  In

5   this as in other Fair Housing Act actions, the United States must be able to contact tenants in

6   order to fulfill the Attorney General's unique, statutory obligations to identify and seek relief on

7   behalf of persons aggrieved by a pattern or practice of housing discrimination.[3]

8   B.      The United States Has A Right to Enter the Subject Property To Interview Potential
            Victims.

9

10          The Current Owners' position that they can limit or require monitoring of interviews of

11   tenants by persons with legitimate business is faulty.  All tenants take their property subject to a

12   covenant of quiet enjoyment, which "secure[s] the lessee against the acts or hindrances of the

13   lessor and thus requires that the lessor refrain from voluntarily impairing the character and value

     of the leased premises."  Ripps v. Kline, 275 P.2d 381, 382 (Nev. 1954).  This right to quiet
14
     enjoyment includes the right of tenants to receive visitors at reasonable times for reasonable
15
     purposes.  See State v. DeCoster, 653 A.2d 891, 893 (Me. 1995); see also Seavy v. I.X.L.
16
     Laundry Co., 108 P.2d 853, 857 (Nev. 1941) (holding that defendant landlord had a duty to
17
     provide safe toilets to tenants' visitors and guests).  Similarly, a tenant has an implied right of
18

19

20          [2]Prior to the 1988 amendments, the Act permitted the Attorney General to secure only
     "preventive relief" in a pattern or practice case.  The courts at that time held that the terms
21   "preventive relief" described only equitable relief, excluding compensatory damages for
     aggrieved individuals.  See United States v. Long, 537 F.2d 1151, 1152 (4th Cir. 1975), cert.
22   denied, 429 U.S. 871 (1976) and United States v. Mitchell, 580 F.2d 789 (5th Cir. 1978).  This
     limitation on the Attorney General's authority, and the duplicative litigation which then became
23   necessary for individuals to secure compensatory damages, were precisely what Congress
     repaired in the 1988 amendments, when it expanded the relief available in a pattern or practice
24   case to include "monetary damages to persons aggrieved."  42 U.S.C. §§ 3614(a), (d).  See also
     United States v. Rent America Corp., 734 F. Supp. 474, 481 (S.D. Fla. 1990).
25

26          [3]The United States has sent one mailing to current residents indicating that this lawsuit is
     pending and that damages may be available for aggrieved persons.  Our experience has shown,
27   however, that such a mailing alone is often not sufficient to identify victims in cases alleging
     design and construction violations of the FHA.
28

1   access to property which extends to third parties who enter for business or social purposes. See

2   Am.Jur.2d, Landlord and Tenant, § 629 (citing cases). The "Sharlands Terrace Rental

3   Agreement" used by the Current Owners does not limit a tenant's right to receive visitors. (See

4   Exhibit D.)

5          The United States seeks access to Sharlands Terrace to fulfill its statutory charge to

6   enforce the Fair Housing Act. The Ninth Circuit has recognized the right of a law enforcement

7   officer to approach a resident for the purposes of asking questions in connection with his or her

8   law enforcement duties. United States v. Hammett, 236 F.3d 1054, 1059 (9th Cir. 2001) (state

9   police officer did not violate defendant's Fourth Amendment rights by entering onto his property

10  for the purpose of asking defendant questions), cert. denied, 534 U.S. 866 (2001). Indeed, this

11  Circuit has recognized the broad premise permitting door-to-door interviews of occupants of

12  residential property.

13         Absent express orders from the person in possession against any possible trespass,
           there is no rule of private or public conduct which makes it illegal per se, or a
14         condemned invasion of the person's right of privacy, for anyone openly and
           peaceably, at high noon, to walk up the steps and knock on the front door of any
15         man's 'castle' with the honest intent of asking questions of the occupant thereof--
           whether the questioner be a pollster, a salesman, or an officer of the law.
16
17  Davis v. United States, 327 F.2d 301, 303 (9th Cir. 1964). See also United States v. Hopper, 58

18  Fed. Appx. 619, 623 (6th Cir. Jan 21, 2003) (unpublished opinion) (state and federal law

19  enforcement officers may encroach upon the curtilage of a home for the purpose of asking

20  questions of the occupants), cert. denied, 540 U.S. 928 (2003); Foster v. United States, 296 F.2d

21  65, 66 (5th Cir. 1965) (applying principle to Special Agents of the FBI attempting to interview a

22  subject at his residence); McLaughlin v. Elsberry, Inc., 868 F.2d 1525, 1529-30 (11th Cir. 1987)

23  (Department of Labor investigators authorized by statute to interview farm laborers in enclosed

24  area marked with "no trespassing" signs have the right to conduct such interviews over

25  objections of owner).

26         No tenant at Sharlands Terrace has expressly ordered the United States not to knock on

27  his or her door. Furthermore, Sharlands Terrace is physically open to visitors. The United States

28  is not aware of any restrictions, such as a management escort, placed by the Current Owners on

1   other visitors that regularly enter the complex (e.g., tenant guests, delivery persons). But even if

2   some general "no trespassing" restriction was in place, Department of Justice personnel would

3   not be trespassers because they would be conducting business authorized by law.

4   C.   The Current Owners Have No Right To Require That Monitors Accompany The United
         States During Tenant Interviews.

5       The Current Owners have offered to allow access to Sharlands Terrace only if one of their

6   representatives accompanies the United States during its interviews. Counsel for the Current

7   Owners represented to this Court in the October 12, 2005 hearing that the purpose of this

8   requirement is to allow the Current Owners to "monitor" the interviews to protect their ongoing

9   "business relationship" with their tenants. Of course, neither the United States nor the Private

10  Plaintiffs has alleged that the Current Owners have violated the Fair Housing Act, so it is unclear

11  why an inquiry by the United States into the ability of a tenant to use his or her apartment would

12  undermine this relationship. Furthermore, nothing the United States has proposed to do would

13  interfere with the Current Owners' ability to communicate directly with their tenants and their

14  conditions are legally impermissible for at least three reasons.

15      First, generally speaking, a party's attorney is entitled to unobstructed access to possible

16  witnesses for the purpose of conducting interviews in preparation for trial. Because a trial "is a

17  quest for truth," it follows that "[t]hat quest will more often be successful if both sides have an

18  equal opportunity to interview the persons who have the information from which the truth may

19  be determined." Gregory v. United States, 369 F.2d 185, 188 (D.C. Cir. 1966), cert. denied, 396

20  U.S. 865 (1969). This principle was reaffirmed in Int'l Bus. Machines v. Edelstein, 526 F.2d 37

21  (2nd Cir. 1975), where the court, upholding counsel's right to interview witnesses, concluded:

22          A lawyer may properly interview any witness or prospective witness for the
23          opposing side in any civil or criminal case without the consent of opposing
            counsel . . . . The right to effective counsel embraces more than just the right to
24          retain counsel.

25  Id. at 44 (quoting Coppolino v. Helpern, 266 F. Supp. 930, 935-6 (S.D.N.Y. 1967)). In setting

26  aside rules imposed by the district court, which required the presence of opposing counsel at or a

27  stenographic record of any interviews conducted by either side, the court of appeals held that

28

-7-

even the trial court is limited in the restrictions that it can impose on the right of counsel to interview possible witnesses:

> We believe that the restrictions on interviewing set by the trial judge exceeded his authority. They not only impair the constitutional right to effective assistance of counsel but are contrary to time-honored and decision-honored principles, namely, that counsel for all parties have a right to interview an adverse party's witnesses (the witness willing) in private without the presence or consent of opposing counsel and without a transcript being made.

526 F.2d at 42. This principle is further reflected in Rule 173 of the Nevada Supreme Court's rules governing professional conduct, which prohibits an attorney, with limited exceptions not relevant here, from "[r]equest[ing] a person other than a client to refrain from voluntarily giving relevant information to another party. . . ."

In Dyer v. Schecter (United States v. Schecter), 77 F.R.D. 696 (N.D. Ohio 1977), a Fair Housing Act case, the court specifically addressed proposed defense restrictions on interviews by the United States of their tenants:

> Counsel is entitled to latitude in the manner selected for integrating, developing, and researching his client's claim. This has been especially recognized when dealing with the question of Court interference with regard to the conduct and confidentiality of interviews in preparing the case. See Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); I.B.M. v. Edelstein, 526 F.2d 37, 44 (2nd Cir. 1975); Fed.R.Civ.P. 26(b)(3). The defendants have not presented a factual basis which would justify Court interference with plaintiff's trial preparation so as to require the extraordinary procedure of requiring prior approval of questions to be asked in interviews of defendants' tenants and how the interviews should otherwise be conducted.

Id. at 699; see also Int'l Bus. Machines, 415 F. Supp. at 670 (in antitrust suit brought by United States, upholding counsel's right to use FBI agents to interview defendant's witnesses in private, without presence or consent of defense counsel).

Second, the presence of monitors would waive the common-interest privilege the United States has with aggrieved persons under the FHA. Courts have recognized that when the United States seeks relief on behalf of victims of alleged discrimination, the United States needs to be able to communicate freely with such individuals in order to fulfill its statutory requirements. See Bauman v. Jacobs Suchard, Inc., 136 F.R.D. 460, 461-62 (N.D. Ill. 1990) (discussing the responsibility of Equal Employment Opportunity Commission under comparable statute in

- 8 -

1    employment cases and finding a privilege applies to communications between the government

2    and aggrieved persons); see also United States v. Webb, Civ. Action No. 4:00CV698JMMA, slip

3    op. at 2 (W.D. Ark. August 1, 2001); United States v. Prestonwood Properties, Inc., Civ. Action

4    No. 3:99-CV-0495-R, slip op. 2 (N.D. Tex. Sept. 16, 1999) (both discussing role of Attorney

5    General in Fair Housing Act cases and finding a privilege between the Attorney General and

6    aggrieved persons) (attached respectively as Exs. E and F). The presence of a management

7    monitor during such an interview would waive the privilege, and chill a tenant's response to

8    questions the United States will need to ask.[4]

9         Third, the presence of the monitors during interviews could amount to a compelled

10   disclosure of a tenant's disability. A full and frank interview with an aggrieved person will

11   require an inquiry into the nature of the tenant's disability. With the presence of a monitor, a

12   tenant will be faced with the unfair and impermissible choice of having to disclose his disability

13   to his current landlord if he wants to pursue a remedy for violations of his civil rights under the

14   FHA. In the context of rental applications, the Department of Housing and Urban Development

15   has issued regulations making it unlawful "to make an inquiry to determine whether an applicant

16   for a dwelling ... has a handicap or to make inquiry as to the nature or severity of a handicap of

17   such a person." 24 C.F.R. §100.202(c). The Current Owners, who are not being sued for

18   damages by the United States under the FHA, have no legitimate reason to ascertain the nature

19   and severity of a tenant's disability in the context of an interview to determine whether the tenant

20   has suffered an injury due to the prior owner's design and construction of the tenant's dwelling.

21        The United States appreciates the Current Owners' interest in minimizing disruption to

22   their tenants, and has attempted to accommodate those interests. However, it cannot assent to

23   the monitoring requirement.

24

25

26

---

27   [4]Ms. Fulstone's suggestion at the October 12, 2005, hearing that the United States need
     not introduce the management monitors to the tenants during interviews does nothing to avoid
28   waiver of this privilege.

IV.    CONCLUSION

For the reasons stated above, the United States respectfully requests that this Court grant its motion for a protective order.

Respectfully submitted,

BRADLEY J. SCHLOZMAN
Acting Assistant Attorney General
Civil Rights Division

Dated:        October 20 , 2005

Steven H. Rosenbaum, Chief
Keisha Dawn Bell, Deputy Chief
Kenneth D. Johnson (DC#428458)
Joseph Gaeta (RI#6477)
Trial Attorneys
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, D.C.  20530
202-353-9062, 202-514-1116 (fax)

Daniel G. Bogden, United States Attorney
Greg Addington, Assistant United States Attorney
(NV#6875)
100 W. Liberty Street, Ste. 600
Reno, NV 89501
775-784-5438, 775-784-5181 (fax)

Attorneys for Plaintiff United States of America

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that, on October 20, 2005, I mailed, by regular mail, a true and correct copy of Plaintiff United States' Motion for Protective Order Permitting Entry Onto Property, to the following:

3

4

Greg Addington, Esq.
Assistant United States Attorney
100 W. Liberty Street, Ste. 600
Reno, NV 89501
775-784-5438, 775-784-5181 (fax)

5

6

7

Attorney for Plaintiff United States of America

8

Christopher A. Brancart, Esq.
Brancart & Brancart
P.O. Box 686
Pescadero, CA 94060
650-879-0141, 650-879-1103 (fax)

9

10

11

Attorney for the Private Plaintiffs

12

Thomas W. Chaffee, Esq.
Pandell Law Firm, Inc.
1990 North California Boulevard, Suite 1010
Walnut Creek, CA 94596
925-974-1700, 925-974-1709 (fax)

13

14

15

Attorney for Defendants James Tibbens
   DBA San Joaquin Design Group

16

17

Michael J. Flynn, Esq.
Flynn, Williams, Wester & Hall, LLP
1099 E Street
San Rafael, CA 94901
415-482-9933, 415-482-9939 (fax)

18

19

20

Attorney for Cross-Defendants
   Thomas J. Finnegan, et al.

21

22

Suellen Fulstone, Esq.
Woodburn and Wedge
Sierra Plaza
6100 Neil Road, Suite 500
Reno, NV 89511-1149
775-688-3007, 775-688-3088 (fax)

23

24

25

Attorney for Defendants Windgate
   Apartments LP, 1930 Wright Street LLC,
   5311 College Oak Drive LLC, 3859 Annadale
   Lane LLC, Sharlands Terrace Apartments I, LLC
   and Sharlands Terrace Apartments II, LLC

26

27

28

- 11 -

Daniel T. Hayward, Esq.
Laxalt & Nomura, Ltd.
9600 Gateway Drive
Reno, NV 89521
775-322-1170, 775-322-1865 (fax)

Attorney for Defendant Jeff Codega
    Planning and Design, Inc.

Brian M. McMahon, Esq.
Hamilton & McMahon, Ltd.
577 California Avenue
Post Office Box 40638
Reno, NV 89504-4638
775-348-2700, 775-348-2745 (fax)

Attorney for Defendants
    Sharlands Terrace LLC,
    Blatt Development of Nevada, Inc., and
    Michael Blatt

Mr. Gilbert Orosco,
an individual d/b/a
H & S Mechanical
1762 Baldwin Lane
Stockton, CA  95215

In Pro Per

William E. Peterson, Esq.
Morris, Pickering & Peterson
6100 Neil Road, Suite 555
Reno, NV 89511
775-829-6000, 775-829-6001 (fax)

Attorney for Cross-Defendants
    Thomas J. Finnegan, et al.

Nicholas B. Salerno, Esq.
Lincoln, Gustafson & Cercos
1120 Town Center Drive, Suite 260
Las Vegas, NV 89134
702-257-1997, 619-257-2203 (fax)

Attorney for Third-Party
    Defendant The Roofing Limited
    Liability Co.

1   Gene J. Stonebarger, Esq.
    Lindsay & Stonebarger
2   1107 9th Street, Suite 1020
    Sacramento, California 95814
3   916-446-0032, 916-446-0034 (fax)

4   Attorney for Third-Party
      Defendant CJS Plumbing, Inc.

5

6   Gloria Sturman, Esq.
    Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
7   415 S. Sixth Street
    Las Vegas, NV 89101

8   Attorney for Third Party
      Defendant McKimmey Electric, Inc.

9

10

11  Joseph Gaeta

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



**U.S. Department of Justice**
Civil Rights Division
Housing and Civil Enforcement Section

SHR:KDB:KDJ:JRG:MB
DJ 175-46-113

| | |
|---|---|
| *U.S. Mail:* | *950 Pennsylvania Ave, N. W.* |
| | *Washington, DC  20530* |
| *Overnight:* | *1800 G Street, N. W.* |
| | *Suite 7052* |
| | *Washington, DC 20006* |
| *Telephone:* | *(202) 514-4713* |
| *Facsimile:* | *(202) 514-1116* |

September 15, 2005

Suellen Fulstone, Esq.
Woodburn and Wedge
Sierra Plaza
6100 Neil Road, Suite 500
Reno, NV 89511-1149

Re:   United States v. Sharlands Terrace, et al., CV-N-04-0292-LRH-RAM

Dear Ms. Fulstone:

I am writing to follow up on the request made to you by Joe Gaeta on Monday, September 12, 2005, that the United States and the private plaintiffs be authorized to canvas the tenants of Sharlands Terrace to identify potential victims. Given the size of the complex, we believe we will be able to complete this work during five consecutive days, with pairs of individuals going door-to-door.

Our goal is to canvas the complex before the next scheduled mediation on October 11, 2005. In order to meet this goal, I ask that you respond to this request by the close of business September 19, 2005. We would be willing to consider reasonable guidelines in order to minimize any disruption to your client's business. Thank you in advance for your cooperation on this matter.

Sincerely,

Steven H. Rosenbaum
Chief

By:   *Kenneth D. Johnson*

Kenneth D. Johnson
Trial Attorney
Housing and Civil Enforcement Section



**U.S. Department of Justice**
Civil Rights Division
Housing and Civil Enforcement Section

SHR:KDB:KDJ:JRG:MB
DJ# 175-46-113

| | |
|---|---|
| *U.S. Mail:* | *950 Pennsylvania Ave, N. W.* |
| | *Washington, DC  20530* |
| *Overnight:* | *1800 G Street, N. W.* |
| | *Suite 7062* |
| | *Washington, DC 20006* |
| *Telephone:* | *(202) 514-4713* |
| *Facsimile:* | *(202) 514-1116* |

September 28, 2005

**VIA FACSIMILE AND FIRST CLASS MAIL**

Michael Flynn, Esq.
Flynn, Williams, Wester, and Hall
1099 E Street
San Rafael, CA  94901

      Re:    <u>United States v. Sharlands Terrace, LLC, et al.</u>

Dear Mr. Flynn:

      I am writing to follow up on our conversation of September 22, 2005, during which we discussed our request for permission to conduct a door-to-door canvassing of the residents of Sharlands Terrace to identify potential aggrieved persons. We made this request orally to Ms. Fulstone on September 12, 2005, and again in writing on September 15, 2005.

      In our conversation, you requested more details as to the procedure we would follow. As we explained to Ms. Fulstone, we propose canvassing the property door-to-door with a team of two persons over a period of no more than five days. The canvassing will occur between the hours of 9:00 am and 7:00 pm, and we will announce ourselves daily to the resident manager. The purpose of the inquiry is to identify persons who may have been harmed by the alleged lack of accessibility at Sharlands Terrace. Tenants will be informed that the United States has filed a lawsuit alleging the builders and designers of the complex violated the Fair Housing Act by constructing ground-floor units that are not accessible to persons with disabilities. We will make clear that no findings of liability have been made by any court as to whether the builders or developers have violated the law. In addition, we will make clear that the United States has not alleged your clients are liable for these violations. During the canvassing, we will leave a letter with a local contact number at the door of tenants who are not home so that we may be reached to schedule a meeting while we are in the area.

Our goal is to conduct this survey before the October 11, 2005, mediation, and we want to come to an agreement with you as soon as possible on the dates of and procedures for this process. We believe that the parameters set forth in this letter are reasonable. We would appreciate a response to this request by the close of business on Friday, September 30th.

Sincerely,

Steven H. Rosenbaum
Chief

By:

Joseph Gaeta
Trial Attorney
Housing and Civil Enforcement Section

cc:     Christopher Brancart, Esq.

2

Michael J. Flynn
Scott Williams
Barry Wester
Robert P. Hall, Jr.
Brian C. Pederson
Jennifer E. Torbohn
Sloan C. Bailey
*of counsel*
Frederic L. Hirschfield
Michael W. Milward
Matthew D. Brekhus
*paralegals*
Holly A. M. Lewis
Wendy E. Jensen

# Flynn, Williams, Wester & Hall, LLP

Attorneys at Law

1099 E Street
San Rafael, California 94901
fax (415) 482-9939

(415) 461-1000
(415) 482-9933

*Sonoma office*

775 Baywood Drive, Suite 305
Petaluma, CA 94954
fax 707.769.2999
707.769.2990

October 4, 2005

*Via Fax No. 202-514-1116*

Joseph Gaeta, Esq.
U.S. Department of Justice
950 Pennsylvania Avenue., N.W.
Washington DC 20530

Re:  United States v. Sharlands Terrace, LLC, et al.

Dear Mr. Gaeta:

This is in response to your letter of September 28, 2005.

My clients are willing to allow the canvassing provided:

1. The hours for the canvassing are reduced from 10 hours to 6 hours.  We suggest 10-7 p.m. as the most convenient hours.

2. Someone from the Sharlands office accompany the canvasser.

Very truly yours,

Michael J. Flynn
By DLG

MJF:dlg
771-007Gaeta100405.doc

# EXHIBIT D

*(tenants' names and identifying information redacted)*

c_owner_17643

## SHARLANDS TERRACE RENTAL AGREEMENT

This agreement, entered into this 4th day of June 2004 between Sharlands Terrace LLC. (Herein referred to as "Management"), rent to resident(s) jointly and severally, Apartment #D2020 (the Premises) and parking space # 4 and/or garage # N/A located at 6400 Sharlands Avenue, Reno, NV 89523, to be used solely for the purpose of personal residence by (Name of each occupant 18 years of age and older) hereinafter referred to as "Residents".

1. Summary of initial rents, charges and deposits:

| | Received | Payable Prior To Occupancy |
|---|---|---|
| Total rent for the period from 6/4/04 – 6/30/04 | $_____ | $ _641.00__ |
| Cleaning Fee (non-refundable)...................... | $__100.00__ | $_____ |
| Security Deposit (refundable)..................... | $_0-preferred_ | $_____ |
| Pet Fee (non-refundable).......................... | $_____ | $_____ |
| Pet Fee (refundable).............................. | $_____ | $_____ |
| Washer/Dryer Rental............................... | $_____ | $_____ |
| Garage Rental..................................... | $_____ | $_____ |
| Other..............Remote Deposit............ | $__100.00__ | $_____ |
| Total.............................................. | $__100.00__ | $ _641.00__ |

2. Terms: This Rental Agreement begins 7/1/04 and ends 6/30/05 for an initial term 13 months. The monthly rate is as follows:

Total Monthly Rent:        $740.00

Other Charges:

| | |
|---|---|
| Lease Break Fee: | $740.00, and all concessions Must Be Reimbursed |
| Late Charges: | $25.00 On The 6th Plus $5.00 Per Day Diem |
| Other Terms And Conditions: | No Cash Excepted At Any Time |

3. Rent Payment: Rent is due on the 1st day of every month and is considered past due if not paid in full by the 5th day or each month. Resident shall pay a late charge as set forth above. Late payments must be paid by cashiers check or money order. Resident shall pay $25.00 for any dishonored check made to management and late fees. Acceptance of a check does not grant the resident credit should there be insufficient funds in the account.

4. Holdover: Under Nevada law, this rental agreement and any changes agreed to in writing will remain in effect on a monthly basis after the initial term. A 30-day written notice to vacate must be issued by the resident prior to vacating, anytime during or after the initial term of this agreement. If improper notice or no notice to vacate is given by resident, resident is liable for prorated rent until lawful termination, and management may deduct this from the security deposit on hand, or collect any Monies due by other lawful means.

5. Utilities: Management will pay for sewer, water, garbage removal and expanded basic cable, resident is responsible for electricity and gas and must have put in their name upon move in date. Resident shall not allow electricity to be disconnected by any means (including nonpayment of bill) until the end of the lease term or renewal period.

6. Security Deposit: Resident pays herewith as a security deposit the above stated sum. Upon lawful termination by either party for any reason, the management may legally claim of the security deposit only such amounts as are reasonable and necessary to remedy defaults in the payment of rent, to repair damages to the premises caused by the resident other than normal wear and tear and to pay reasonable costs of cleaning in excess of the non-refundable cleaning fee set out above. The excess portion of the security deposit, which is not used as set forth herein, shall be refunded along with an itemized statement of charges within thirty (30) days of lawful termination of tenancy. The security deposit may be used for unpaid rent if the tenancy period set forth in Paragraph two (2) is not met.

7. Early Termination: Resident may terminate this Lease prior to the last day of the Lease Term, if and only if, (I) Resident gives Management written 30 day notice of such early termination, verbal notice shall not be considered effective notice. (II) Resident is not in default under the lease at the same time. (III) Early termination notice is accompanied by payment of the lease break fee in the amount set forth in Paragraph 2, plus repayment of any and all rent or move-in concession credited to the resident, plus payment of all rent due through and including the Early Termination date.

c_owner_1/644

8.  Collection:  If resident owes more money than has been held in his account, the management, after issuing a proper itemized statement noting amount owed, may pursue at his option any legal means to collection.  All costs of collection shall be borne by resident.  (See Paragraph 6).

9.  Subleasing and guests:  Neither subletting of the Premises nor assignment of this Lease by Resident will be permitted under any circumstances.

10. Pets:  All animals or pets must be pre-approved by Management.  Upon approval, Resident and Management must execute a pet addendum.  If resident obtains a pet without management approval, management may demand an additional deposit for the pet and increase the rent.  If the pet does not fall into the allowed guidelines, management may take legal for breach of contract.

11. Parking & Vehicles:  Resident agrees to park in their assigned parking space or garage.  Guests must park in non-resident reserved areas.  If management does not assign a parking space, parking shall be on a first come basis.  All vehicles must be licensed and operable at all times.  Resident shall not keep in or about said premises boats, campers, trailers, mobile homes or other recreational vehicles with out separate written agreement by management.  Management at the owner's expense may tow unauthorized vehicles.   Management is not responsible for damage or theft while vehicles are parked on the premises.

12. Rent Incentive: Management agrees to reduce rent by a/a with the express understanding that in the event that resident does not fully perform under the terms and conditions of the lease, resident agrees to return to Management immediately upon demand any and all rent incentives herein accepted by Resident or reimburse Management full market value for said incentives. (Resident's Initials _____).

13. Maintenance, repairs or alteration and inventory: Resident acknowledges that the premises are in good order and repair, unless otherwise indicated herein.  Management will give resident written inventory if furniture and furnishings on the premises and resident shall be deemed to have possession of all said furniture and furnishings in good condition and repair unless he object thereto in writing within five (5) days after receipt of such inventory.  Resident shall, at his own expense, and at all times maintain the premises in a clean and sanitary manner, including all equipment, appliances, furniture and furnishings therein and shall surrender the same at termination hereof, in as good a condition as received normal wear expected, resident shall not re-key or change locks, paint, paper or otherwise redecorate or make alterations to the premises with out the prior written consent of management.  Resident shall keep the grounds clear of rubbish that are considered exclusively for the use of the resident.  Resident shall not commit any waste upon said premises or any nuisance or act, which may disturb the quiet enjoyment of any resident in the building.  Resident agrees to pay for all repairs, replacements and maintenance caused by his misconduct, failure to report or negligence and this will be paid no later than the monthly payment date next following such repairs.  Tenant understands and acknowledges that penetration of water or other moisture into the premises can activate and/or promote the growth of toxic mold and other related species.  Tenant further understands and acknowledges that toxic mold and/or its related species can cause health problems.  Tenant shall immediately notify Landlord of any damage, defect or natural wear pertaining to the premises, including but not limited to the plumbing, roofing, wiring or other workmanship on the premises, and particularly any condition that involves the leakage or penetration of water in or about the leased premises.  Tenant is responsible and agrees to be liable for any and all damages caused by failing to notify Landlord of water or moisture caused by rain or other moisture from leaving windows open, and/or by overflow of water, or stoppage of waste pipes, or any other damages to the premises due to the acts or neglect of Tenant or guest of the Tenant.  In the event of an emergency, Landlord may enter without 24 hours notice to tenant.

14. Right of Entry & Inspection:  Management may enter the premise at all reasonable times and for all reasonable purposes and for at least one (1) maintenance inspection each month.  In accordance with NRS requirements, management agrees to give resident a twenty-four (24) hour notification for entry, except in case of emergency.

15. Defects, damage:  Resident shall report any defect or natural wear pertaining to plumbing, wiring or workmanship on the premise at once.  Resident is responsible for and agrees to pay for, damages to appliances, carpeting or the building in general that is due to the acts of the resident or guest of the resident.  Parents are responsible for their children's actions,  the parents will pay for Property destruction by children.

16. Termination:  Upon completion of the initial term set forth in paragraph 2, this agreement and the tenancy hereby granted may be terminated at any time by either party hereto giving to the other party a 30 day written notice to vacate said premises or as notice or no notice to vacate is given by resident prior to vacating, resident is liable for prorated rent until lawful termination and management may deduct such rent from the security deposit or proceed to collect such rent by any lawful means. In the event of court actions, reasonable attorney's free may be awarded to the prevailing party and the losing party hereby obligates himself to pay same.  Upon termination of the tenancy, the resident shall surrender and vacate the premise, including removal of any and all property of the resident's property.  Before departure, the resident shall return keys and personal property listed on the inventory to management in good, clean and sanitary condition, normal wear excepted.

17. **Policies:** Resident agrees to abide by any and all rules and policies including, but not limited to, rules with respect to noise, odors, disposal of refuse, pets, parking, and use of common areas. Further, resident agrees to abide by all amendments and additions to said rules after due notice of such amendments or additions. Resident at the time of execution of the agreement acknowledges that he has notice of all existing rules and regulations pertaining to the premises, (Resident's Initials ___ ).

18. **Breach of contract:** Failure of resident to pay rent or other charges promptly when due or to comply with any other term or condition hereto or any rules or policies of which he has notice as required by law or to comply with any applicable provisions of the laws of the State of Nevada, shall at the option of the management empower them to terminate this tenancy upon giving proper notice as set forth in the Residential Landlord and Tenant Act contained in Chapter 118A of the Nevada Revised Statutes.

19. **Waiver of terms:** Any failure by management to enforce the terms of this agreement shall not constitute a waiver of said terms by management. Acceptance of rent due by the management after any default shall not be construed to waive any rights of management or affect any notice or legal action theretofore given or commenced.

20. **Swipe Card/:** Resident acknowledges receipt of ___ swipe card(s) and that each card shall remain the property of the Management. If the card is lost, damaged or stolen, resident agrees to pay $5.00 for each replacement card.

21. **Garage Remotes:** Resident acknowledges receipt of N/A garage remote(s) and that each remote shall remain the property of the Management. If the remote is lost, damaged or stolen, resident agrees to pay $50.00 for each replacement remote.

22. **Liability:** Management shall not be liable for any damage or injury to resident, or any other person or any other property, occurring on the premise or any part thereof, or in common area thereof, unless such liability is based o the negligent act or omission of management, his agent or employee, and resident agrees to hold management harmless from any claims for damages if caused by the negligent acts or omissions of the resident or his guests. Resident shall be responsible for damages caused by his misconduct or negligence and that of his family, invitee or guests.

23. **Insurance:** It is advised that resident obtain renter's insurance as management or his agent's insurance cannot cover resident's property.

24. **Agent:** The name and address of the person authorized to act on behalf of the owner for the purpose of service of process and receiving notices and requests is as follows: Sharlands Terrace Apartments 6400 Sharlands Ave.; Reno, NV 89523. Then name and telephone number of the manager of the premises is Andrea Casti, 775-787-7824.

25. **Contract:** The above agreement is accepted and agreed to jointly and severally. The undersigned have read the above contract and understand and agree to all the provisions thereof and further acknowledge that they have received a copy of said contract.

Resident(s)

Management (Authorized Agent of the Owner)

By: _____

Title: _____

Date: 6/3/04

EQUAL HOUSING OPPORTUNITY

FILED

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

AUG - 1 2001

UNITED STATES OF AMERICA                                    PLAINTIFF

V.                                    4:00CV698JMM

JAMES "JIM" WEBB, ET AL                                    DEFENDANTS

<u>ORDER DENYING DEFENDANTS' MOTION TO COMPEL TESTIMONY</u>

During a deposition of Nathaniel and Diane Black held on May 22, 2001, Defendants'

counsel asked Mr. and Mrs. Black to answer questions about specific conversations with the

Government's attorneys in this case. The Government's attorneys, who were present at the

deposition, instructed Mr. and Mrs. Black not to answer the questions based upon the common

interest in litigation privilege. Defendants ask the Court to order Nathaniel and Diane Black to

respond to those questions. Defendants contend that because the Blacks are not parties to the

litigation and they are not represented by counsel, there is no valid common interest in litigation

privilege.

In *U.S. v. Prestonwood Properties, Inc.*, et al, No. 3:99CV0495R, the United States

District Court for the Northern District of Texas was faced with a similar issue. In that case, the

United States brought suit under the Fair Housing Act on behalf of persons who had allegedly

been victims of housing discrimination. The Government asked the court to issue a protective

order barring the defendants' inquiry into communications between counsel for the United States

and the complainants based upon the common interest in litigation privilege. The court granted

the Government's motion. The court stated,

> The Court finds that there is a common interest in litigation privilege that protects
> communications between counsel for the United States and HUD complainants
> and other alleged aggrieved persons in matters such as this where the United



> States acts in its capacity to protect the interest of HUD complainants and the aggrieved persons to vindicate alleged violations of the Fair Housing Act.

*U.S. v. Prestonwood Properties, Inc.*, et al, No. 3:99CV0495R, slip op. at 2 (N.D. Tex. filed Sept. 16, 1999). The court further explained that it is the Government's burden to establish that a particular communication is privileged.

Moreover, in *Bauman v. Jacobs Suchard, Inc.*, 136 F.R.D. 460 (N.D. Ill. 1990), the EEOC was granted leave to intervene as a plaintiff in an employment discrimination action brought under the ADEA. During discovery, the defendant asked the EEOC to produce all questionnaires it had received from Jacobs Suchard employees who were not plaintiffs in the lawsuit. The EEOC objected based upon the attorney-client and work product privilege. The court stated,

> While there does not appear to be any formal attorney-client relationship, the EEOC, through its attorneys, are essentially acting as de facto counsel for the employees. There is no sound reason why employers in such cases should have available the protection of the attorney-client privilege whereas employees would not. Communications between the EEOC attorneys and the employees represented in ADEA cases brought by the EEOC are privileged.

*Bauman*, 136 F.R.D. at 461-62.

The Court agrees with the rationale explained in the cases cited by the Government upholding a privilege which protects communications between a governmental agency and persons on whose behalf the governmental agency brings suit. Although there is no technical attorney-client relationship between the Blacks and the Government in this case, counsel for the Government is pursuing this case to enforce the rights of Mr. and Mrs. Black under the Fair Housing Act. Congress set up the Act to encourage and enable persons, who have been victims of discrimination, to pursue justice when those victimized persons do not have the financial

resources to litigate such a claim. It does not follow that persons who choose to utilize this Act give up their right to confidential communications with the attorney representing their interests.

After review of the particular questions presented to the Blacks during the May 22, 2001 deposition and the Government's objections, the Court finds that the Government's objections should be sustained. The substance and content of these communications between the Government's counsel and the Blacks is protected by the common interest in litigation privilege. Accordingly, defendants' motion to compel testimony (Docket # 10) is denied.

IT IS SO ORDERED this 31st day of July 2001.

James M. Moody
United States District Judge

THIS DOCUMENT ENTERED ON
DOCKET SHEET IN COMPLIANCE
WITH RULE 58 AND/OR 79(a) FRCP
ON 8/1/01 BY

ah

UNITED STATES DISTRICT COURT
Eastern District of Arkansas
U.S. Court House
600 West Capitol, Suite 402
Little Rock, Arkansas 72201-3325


August 1, 2001



* * MAILING CERTIFICATE OF CLERK * *


Re:  4:00-cv-00698.



True and correct copies of the attached were mailed by the clerk to the
following:

        Philip E. Kaplan, Esq.
        Kaplan, Brewer & Maxey, P.A.
        Metro Centre Mall
        415 Main Street
        Little Rock, AR  72201-3801

        Isabelle M. Thabault, Esq.
        U. S. Department of Justice
        Housing & Enforcement-Civil Rights Div
        Post Office Box 65998
        Washington, DC  20035-5998

        Joan A. Magagna, Esq.
        U. S. Department of Justice
        Housing & Enforcement-Civil Rights Div
        Post Office Box 65998
        Washington, DC  20035-5998

        Rebecca B. Bond, Esq.
        U. S. Department of Justice
        Housing & Enforcement-Civil Rights Div
        Post Office Box 65998
        Washington, DC  20035-5998

        Stacey Elise McCord, Esq.
        U. S. Attorney's Office
        Eastern District of Arkansas
        425 West Capitol Avenue, Suite 500
        Post Office Box 1229
        Little Rock, AR  72203-1229

        Bill Lann Lee, Esq.
        U. S. Department of Justice
        Civil Rights Division
        Post Office Box 65968

washington, DC  20035-5968

press

James W. McCormack, Clerk

Date: _____8/1/01_____         BY: _____A Hensley_____



**U.S. DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**

# FILED

SEP 16 1999

NANCY DOHERTY, CLERK
By _____
         Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ORIGINAL

| | |
|---|---|
| United States of America, | ) |
|     Plaintiff, | ) |
| v. | )   CIV. ACTION NO. 3:99-CV-0495-R |
| Prestonwood Properties, Inc.; | ) |
| Stillmeadow Property | ) |
| Management, Inc.; | ) |
| Ronald D. Hinds, individually | ) |
| and in his capacity as officer | ) |
| of Prestonwood; | ) |
| Leslie Hinds, individually and | ) |
| in his capacity as officer of | ) |
| Prestonwood; and | ) |
| Kevin Layne Hinds, also | ) |
| known as Kevin Layne: | ) |
| Hinds, individually and in his | ) |
| capacity as officer of | ) |
| Stillmeadow; | ) |
| | ) |
|     Defendants. | ) |



ENTERED ON DOCKET

SEP 17 1999

U.S. DISTRICT CLERK'S OFFICE

## O R D E R

    Plaintiff United States has moved for a protective order to prevent certain questioning by Defendants' counsel during depositions. Upon consideration of the United States' Motion for Protective Order and Brief in Support, the opposition thereto, and argument of counsel, it is hereby

    ORDERED that the United States' Motion be GRANTED as follows:

    The United States brought this action pursuant to the Fair Housing Act, 42 U.S.C. §§ 3601-3619. The complaint seeks relief pursuant to 42 U.S.C. § 3612(o) for aggrieved person on whose behalf the Department of Housing and Urban Development (HUD) issued determinations of reasonable cause and charges of

53

discrimination pursuant to 42 U.S.C. § 3610 (the HUD
complainants).  It also seeks relief pursuant to 42 U.S.C.
§ 3614(d) for other aggrieved persons claimed to be victims of an
alleged pattern or practice of housing discrimination.

### I.   COMMON INTEREST IN LITIGATION

The United States moves for a protective order barring
inquiry into communications between counsel for the United States
and the HUD complainants and other alleged aggrieved persons.
The Court finds that there is a common interest in litigation
privilege that protects communications between counsel for the
United States and HUD complainants and other alleged aggrieved
persons in matters such as this where the United States acts in
its capacity to protect the interests of HUD complainants and the
aggrieved persons to vindicate alleged violations of the Fair
Housing Act.  The burden is on the United States to establish
that a particular communication is privileged.   Whether meetings
between counsel for the United States and aggrieved persons
occurred and who was present at the meetings is not privileged;
however, the substance and content of communications by aggrieved
parties as well as the statements made by counsel for the United
States are privileged.

### II.   MATTERS PROTECTED BY FEDERAL RULE OF EVIDENCE 412

The United States also moves for a protective order to
prevent inquiry into whether a witness has undergone an abortion
or miscarriage.  Inquiries of this nature are limited by Fed. R.
Evid. 412.  Defendants may not ask questions about abortions or
miscarriages.  Defendants may not ask question about sexual

- 2 -

history without a prior ruling by the Court.   The United States
may interpose an objection based on Rule 412 where appropriate
and seek a ruling from the Court.   That line of questioning will
cease pending order of the Court.   The burden shall be on
Defendants to establish the exception to Rule 412(b)(2).

DATE: SEPTEMBER 15, 1999

Jeff Kaplan
United States Magistrate Judge

- 3 -

Seen and agree to:

_____
Jonathan Ayers
Ayers & Ayers
2400 One Main Pl.
1201 Main St.
Dallas, TX 75202
(214) 757-9009
fax 214-757-9088
Counsel for Prestonwood
Properties, Inc., Ronald
Hinds, and Leslie Hinds


_____
William Cornelius
Wilson, Sheehy, Knowles,
Robertson & Cornelius
315 East 5th St.
Tyler, Texas 75701-4226
(903) 593-2561
fax (903) 593-0686
Counsel for Kevin Layne Hinds
and Stillmeadow Property
Management, Inc.


_____
Joan A. Magagna, Chief
Brian F. Heffernan
Clay G. Guthridge
D.C. Bar No. 940106
Elizabeth O. Tucci
Md. Bar No. 221400388
Attorneys
U.S. Department of Justice
Civil Rights Division
Housing and Civil
   Enforcement Section
P.O. Box 65998
Washington, D.C. 20035-5998
(202) 353-9707

- 4 -

OCT 2 1 2005

ERK, U.S. DISTRICT COU.

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, ) | Case No. CV-N-04-0292-LRH-RAM |
| ) | – *consolidated with* – |
| ) | Case No. CV-N-04-0397 |
| v. ) | |
| ) | |
| ) | [proposed] |
| SHARLANDS TERRACE LLC, et al., Defendants ) | –ORDER– |
| —————————————————— ) | |
| ) | |
| SILVER STATE FAIR HOUSING ) | |
| COUNCIL, INC., et al., Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| SHARLANDS TERRACE LLC, et al., Defendants. ) | |

Upon consideration of Plaintiff United States' Motion for Protective Order Permitting

Entry Onto Property, it is ORDERED that the United States' Motion is GRANTED, and that

Defendants shall permit the United States entry onto the property and shall not monitor or

otherwise restrict the attorneys and agents of the United States from interviewing the tenants of

the Sharlands Terrace Apartments, 6400 Sharlands Avenue, Reno, Nevada.

_____

UNITED STATES DISTRICT COURT