ORIGINAL

RECEIVED
IN DROP BOX

SUELLEN FULSTONE
Nevada State Bar No. 1615
WOODBURN AND WEDGE
6100 Neil Road, Suite 500
Reno, Nevada 89511
Telephone: (775) 688-3007
Facsimile: (775) 688-3088

CLERK, U.S. DISTRICT COURT
DISTRICT OF NEVADA

Attorneys for Defendants/
Cross-Claim/Third Party Plaintiffs
WINDGATE APARTMENTS, L.P.;
1930 WRIGHT STREET LLC;
5311 COLLEGE OAK DRIVE LLC;
3859 ANNADALE LANE LLC;
SHARLANDS TERRACE APARTMENTS
I, LLC; and SHARLANDS TERRACE
APARTMENTS II, LLC

U.S. DISTRICT COURT
DISTRICT OF NEVADA
FILED

NOV - 1 2005

CLERK, U.S. DISTRICT COURT
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CV-N-04-0292-LRH-VPC |
| Plaintiff, | (Consolidated with Case No. CV-N-04-0397) |
| v. | |
| SHARLANDS TERRACE LLC; JEFF CODEGA PLANNING AND DESIGN, INC.; JAMES TIBBENS DBA SAN JOAQUIN DESIGN GROUP; BLATT DEVELOPMENT OF NEVADA, INC.; WINDGATE APARTMENTS LP; 1930 WRIGHT STREET LLC; 5311 COLLEGE OAK DRIVE LLC; 3859 ANNADALE LANE LLC; SHARLANDS TERRACE APARTMENTS I, LLC; and SHARLANDS TERRACE APARTMENTS II, LLC, | POINTS AND AUTHORITIES OF CURRENT OWNERS IN OPPOSITION TO MOTION FOR PROTECTIVE ORDER **EXPEDITED REVIEW REQUESTED** |
| Defendants. | |
| and related claims, cross-claims, and third party claims | |

Defendants and Defendants and Cross-Claim/Third Party Plaintiffs Windgate

172

Apartments L.P., 1930 Wright Street LLC, 5311 College Oak Drive LLC, 3859 Annadale Lane LLC, Sharlands Terrace Apartments I, LLC, and Sharlands Terrace Apartments II, LLC (the "Current Owners") submit the following points and authorities in opposition to the motion of the United States for a protective order under FRCP 26 and FRCP 34 allowing the United States to enter upon the premises of the Sharlands Terrace apartment complex and go door-to-door interviewing tenants "without supervision or other intrusion by the current owners" of the apartments.

I. THE U. S. MOTION FOR PROTECTIVE ORDER SHOULD BE DENIED.

The Justice Department has the arrogance and temerity to come before this Court and argue that the government has the absolute "right" to enter upon the private property of the Sharlands Terrace apartments and go door-to-door interviewing tenants. The Justice Department has apparently forgotten the Bill of Rights and the Constitutional protections of people and their property from government intrusion. The United States is not in pursuit of criminals here and cannot lawfully gain entry to the apartment complex under the pretext of "asking questions" about criminal activity.

Nor can the United States rely on the "rights" of tenants to have guests or business visitors. In an unacceptable exercise in casuistry, the Justice Department argues that "[n]o tenant at Sharlands Terrace has expressly ordered the United States not to knock on his or her door." United States' Motion for Protective Order Permitting Entry Onto Property, p. 6, lns. 26-27. In truth, no single tenant at Sharlands Terrace has invited the United States to visit his or her apartment either. The Justice Department fails to note the sign at the entrance to the Sharlands Terrace premises that states "Soliciting our Residents is not allowed! Private Property".

The United States and the Current Owners are in a lawsuit over FHA violations at the apartment premises. As has been stated repeatedly, the Current Owners are charged with no

2

wrongdoing. They are included in the lawsuit only for purposes of relief. The discovery rules nonetheless apply and this Court has directed that the request of the United States for entry upon the premises of the apartment complex to interview tenants be briefed as a discovery issue. As a discovery matter, the request of the United States must be denied. There simply is no provision in the discovery rules for "entry" upon a party's property for purposes of interviewing witnesses.

Rule 34 authorizes entry for inspection and similar purposes. Under Rule 34 and otherwise, the Government has "entered" upon the property at Sharlands Terrace several times already, asking the Current Owners' permission and being granted that permission. They have inspected the apartments for accessibility design and construction violations on at least three occasions. They have inspected and copied all of the files in the possession of the Current Owners regarding present or former tenants.

Rule 34 makes provision for the production of documents and for the entry upon property for inspection and related purposes. Nothing in Rule 34 or any of the case law developed under makes any mention whatsoever of entering upon land for the purpose of interviewing witnesses. If the United States has a litigant's "right" to interview witnesses for purposes of this action, the Current Owners have done nothing to interfere with that right.

Subject to the privacy protections of a confidentiality stipulation, the Current Owners have made the tenant files available to the United States and other parties. The Government accordingly has telephone numbers for existing tenants as well as other identifying information for both existing and prior tenants. The United States can telephone current or former tenants at will and can conduct telephone interviews, solicit opportunities to meet, or otherwise communicate with such persons. The "right" of a party to a lawsuit, even the all-powerful government, to interview witnesses does not extend to the right to enter upon private property over the objections of the property owner.

3

With the tenants' phone numbers and other information, the United States can contact prior or current tenants and conduct private interviews at will. What it wants, however, is in-person interviews, with the tenants captive in their homes, circumstances undeniably more amenable to the government's efforts to drum up claims. See, e.g., Ohralik v. Ohio State Bar Association, 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1988) (State Bar could constitutionally prohibit soliciting clients in person). The government's insistence on private, in-person "interviews" is a red flag. These tenants have already been solicited several times, once by the government and additionally by the private plaintiffs, with no response. The United States may want no witnesses as it bullies, badgers and, for all practical purposes, bribes Sharlands Terrace tenants into making "claims" as "aggrieved parties" to enhance the "aggrieved parties" fund. The solicitation of "aggrieved parties" in these circumstances may not literally violate the common law and statutory prohibitions on champerty and maintenance but there is no justification for doing it in secret.

The United States also trots out a claim of "common interest" privilege. The Justice Department cannot decide whether it is interviewing witnesses or clients. There is clearly no "common interest" or other privilege until these tenants, or any of them, become "aggrieved persons" under the law. At present, none of them falls in that category. There is no privilege to claim. If, in the course of the interview, the United States should determine that a tenant qualifies as an "aggrieved person" under the Act, the privilege can be asserted at that time and appropriate accommodations made. The possibility that some tenants may, in fact, be "aggrieved persons" does not support the assertion of a pre-emptive privilege that has the effect only of providing the cover of secrecy to the government's preliminary inquiries.

Nothing in the Fair Housing Act or elsewhere in the federal law or the discovery rules gives the United States the right to come upon the property of Sharlands Terrace to interview tenants except by invitation of the Current Owners or the tenants. Any such law would have to

4

be struck down as unconstitutional.

II.     THE CASES CITED BY THE UNITED STATES ARE INAPPOSITE.

The Justice Department cites Dyer v. Schecter, 77 F.R.D. 696 (N.D.Ohio 1977), as supporting their argument for conducting interviews as they determine without the presence of the Current Owners.  The Department mistakenly describes Dyer as a Fair Housing Act case.  It actually arose under the 1968 Civil Rights Act.  Under its different facts and circumstances, it has no bearing here.  In Dyer, the defendants who were the targets of the discrimination allegations wanted to have the Court approve the questions asked and the statements made by interviewers.  They also wanted the interviews to be conducted by government employees other than FBI agents.  The Court found that the defendants had failed to provide sufficient evidence to support the issuance of the protective orders they requested.

In the present case, the Current Owners are accused of no wrongdoing.  They are not seeking to control either the questions asked or the government employees doing the asking. The Justice Department repeatedly quotes counsel's use of the term "monitor" to describe the desire of the Current Owners to have a representative present for tenant interviews.  Citing that language, the Justice Department expressly seeks a protective order allowing the government to interview tenants "without supervision or other intrusion by the current owners."  "Monitor" does not mean supervise or intrude and the Current Owners have done and said nothing to suggest that they have an interest in either.  "Monitor" merely means to "observe."

The Current Owners have no interest in either a larger or a smaller number of "aggrieved persons."  The Current Owners, as admittedly innocent parties here, do have an interest in protecting the business relationships they have built with their tenants.  In the instant case, it is the United States that seeks the protective order and it is the United States that has failed to give the Court either the evidentiary basis or the law to support an order excluding the Current Owners from being present at interviews of their tenants.

5

The Justice Department also cites <u>McLaughlin v. Elsberry, Inc.</u>, 868 F.2d 1525 (11th Cir. 1989), in support of its argument that the Fourth Amendment does not preclude it from entering on the premises of Sharlands Terrace to interview tenants over the objections of the owners. <u>McLaughlin</u>, however, is not only an Eleventh Circuit case which is not binding on this court but also notably relied on the "open fields" exception to the Fourth Amendment's warrant requirement to permit interviews of migrant workers. The "open fields" exception is plainly not available here. Furthermore, the Court should note that, in more than 15 years, <u>McLaughlin</u> has not once been cited by any other court for either its holding or its rationale.

The Justice Department further cites <u>United States v. Hammett</u>, 236 F.3d 1054, 1059 (9th Cir. 2001), for the proposition that a law enforcement officer may approach a resident for the purpose of asking questions in connection with his or her law enforcement duties. <u>Hammett</u> involved a narcotics investigation and the Court again relied on the "open fields" and "in plain view" exceptions to the Fourth Amendment. The Current Owners would have no Fourth Amendment objection if the Justice Department or some other appropriate law enforcement officer with reason to suspect a particular tenant of some drug offense came on the premises of the apartment complex and knocked on that person's door. That is not what the government proposed to do here, however. The government is not authorized to go door-to-door without some reasonable suspicion. <u>Hammett</u> has no application on the facts of this case. <u>Foster v. United States</u>, 296 F.2d 65, 66 (5th Cir. 1965), and <u>United States v. Hopper</u>, 58 Fed. Appx. 619, 623 (6th Cir. Jan. 21, 2003) (unpublished opinion),[1] similarly involve criminal investigations and are inapposite and unenlightening.

III.  CONCLUSION.

The Justice Department has notably offered no evidence that would support the

---

[1] Although the United States notes that the opinion in <u>Hopper</u> is unpublished, it failed to serve a copy on counsel for the Current Owners as required. There is likewise no reference to providing a copy to the Court. A copy of the opinion is attached for the Court's convenience.

6

exclusion of the Current Owners from attendance at interviews of tenants conducted on the premises of Sharlands Terrace. The Justice Department has likewise offered no law justifying the government's nonconsensual entry upon private property for purposes of interviewing potential witnesses or "aggrieved parties." Under FRCP Rule 26, the motion for protective order should be denied.

Dated this 1st day of November, 2005.

WOODBURN AND WEDGE
6100 Neil Road, Suite 500
Reno, NV 89511

By _____
Suellen Fulstone
Attorneys for Defendants/
Cross-Claim/Third Party Plaintiffs
Windgate Apartments, L.P.
1930 Wright Street LLC
5311 College Oak Drive LLC
3859 Annadale Lane LLC
Sharlands Terrace Apartments I, LLC
and Sharlands Terrace Apartments II, LLC

58 Fed.Appx. 619

**Briefs and Other Related Documents**

This case was not selected for publication in the Federal Reporter.

NOT RECOMMENDED FOR FULL--TEXT PUBLICATION

Sixth Circuit Rule 28(g) limits citation to specific situations. Please see Rule 28(g) before citing in a proceeding in a court in the Sixth Circuit. If cited, a copy must be served on other parties and the Court.

Please use FIND to look at the applicable circuit court rule before citing this opinion. Sixth Circuit Rule 28(g). (FIND CTA6 Rule 28.)

United States Court of Appeals,
Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jeffrey HOPPER, Defendant-Appellant.
No. 01-5811.
Jan. 21, 2003.

Defendant was convicted of drug-trafficking offenses, following entry of guilty plea in the United States District Court for the Eastern District of Tennessee, Robert Leon Jordan, J. Defendant appealed. The Court of Appeals held that: (1) officers did not violate drug defendant's Fourth Amendment rights by entering curtilage of his home; (2) defendant could not suppress evidence based on purportedly illegal seizure of his wife, (3) District Court did not clearly err in crediting officers' testimony; (4) affidavit for search warrant was not rendered insufficient by its failure to reveal that officers ignored "No Trespassing" signs; (5) affidavit's failure to refer to basis of informant's knowledge did not render it insufficient; and (6) although search violated federal rule providing that only federal magistrate judges or state court judges could issue search warrants, exclusion of evidence obtained in search was not appropriate.
Affirmed.

West Headnotes

[1] KeyCite Notes 

 96H Controlled Substances
  96HIV Searches and Seizures
   96HIV(B) Search Without Warrant
    96Hk127 Premises, Search of
     96Hk134 k. Open Fields; Curtilage or Yard; Growing Plants. Most Cited Cases

Officers did not violate drug defendant's Fourth Amendment rights in entering curtilage of his home, and observing equipment consistent with marijuana-growing operation, where defendant's "No Trespassing" signs were within visual distance of his home, but his home was not enclosed, he made no argument that area where signs were posted was put to any special use, and he took no special measures to protect the area from open observation. U.S.C.A. Const.Amend. 4.

[2] KeyCite Notes 

‥96H Controlled Substances
 ‥96HIV Searches and Seizures
  ‥96HIV(B) Search Without Warrant
   ‥96Hk127 Premises, Search of
    ‥96Hk134 k. Open Fields; Curtilage or Yard; Growing Plants. Most Cited Cases

Even if curtilage of drug defendant's home had enjoyed Fourth Amendment protection, officers did not violate his Fourth Amendment rights in observing equipment consistent with marijuana-growing operation as they approached home and, seeking consent to search, knocked on front and back doors, inasmuch as officers could encroach upon curtilage for purpose of asking questions of occupants. U.S.C.A. Const.Amend. 4.

[3] KeyCite Notes 

‥110 Criminal Law
 ‥110XVII Evidence
  ‥110XVII(I) Competency in General
   ‥110k394 Evidence Wrongfully Obtained
    ‥110k394.5 Objections to Evidence
     ‥110k394.5(2) k. Persons Entitled to Object. Most Cited Cases

Drug defendant could not suppress evidence based on purportedly illegal seizure of his wife, inasmuch as he could not vicariously assert Fourth Amendment rights. U.S.C.A. Const.Amend. 4.

[4] KeyCite Notes 

‥110 Criminal Law
 ‥110XVII Evidence
  ‥110XVII(I) Competency in General
   ‥110k394 Evidence Wrongfully Obtained
    ‥110k394.6 Motions Challenging Admissibility of Evidence
     ‥110k394.6(5) k. Hearing and Determination. Most Cited Cases

District court did not clearly err in crediting officers' testimony that contradicted drug defendant's assertions, offered in support of his argument that protective sweep of his residence was not voluntary, that officers ordered his wife to get into police car at gunpoint, and denied her opportunity to gather her purse, speak to her children or friend, or follow officers in her own vehicle. U.S.C.A. Const.Amend. 4.

[5] KeyCite Notes 

‥96H Controlled Substances
 ‥96HIV Searches and Seizures
  ‥96HIV(C) Search Under Warrant
   ‥96Hk144 Affidavits, Complaints, and Evidence for Issuance of Warrants

↪96Hk147 k. Error or Ambiguity; Omissions. Most Cited Cases

Affidavit was not rendered insufficient to establish probable cause by its failure to reveal alleged facts that officers ignored two "No Trespassing" signs in approaching drug defendant's home, that defendant's wife was illegally stopped and taken to her residence against her will, that she was held captive for two hours without her consent, and that officers' knowledge of marijuana-growing operation was illegally obtained, where initial entry onto defendant's property and sweep of his residence were all permissible under Fourth Amendment and therefore would not have undermined finding of probable cause. U.S.C.A. Const.Amend. 4.

[6] KeyCite Notes

↪96H Controlled Substances
  ↪96HIV Searches and Seizures
    ↪96HIV(C) Search Under Warrant
      ↪96Hk144 Affidavits, Complaints, and Evidence for Issuance of Warrants
        ↪96Hk148 Informants
          ↪96Hk148(4) k. Confidential or Unnamed Informants. Most Cited Cases

Affidavit's failure to refer to basis of informant's knowledge did not render it insufficient to establish probable cause to search drug defendant's home, where affidavit documented reliable confidential informant who told police that defendant and another were conspiring to manufacture marijuana at their residences, officers observed marijuana equipment when they went to defendant's residence to interview him, and officers found indoor growing operation in the defendant's house after his wife consented to search. U.S.C.A. Const.Amend. 4.

[7] KeyCite Notes

↪96H Controlled Substances
  ↪96HIV Searches and Seizures
    ↪96HIV(C) Search Under Warrant
      ↪96Hk141 Issuance, Requisites, and Validity of Warrant in General
        ↪96Hk142 k. In General. Most Cited Cases

Search of drug defendant's home by state and federal officers was federal, not state, search, and thus was subject to federal rule providing that only federal magistrate judges or state court judges could issue search warrants. U.S.C.A. Const.Amend. 4; Fed.Rules Cr.Proc.Rule 41(a), 18 U.S.C.A.

[8] KeyCite Notes 

↪110 Criminal Law
  ↪110XVII Evidence
    ↪110XVII(I) Competency in General
      ↪110k394 Evidence Wrongfully Obtained
        ↪110k394.4 Unlawful Search or Seizure
          ↪110k394.4(10) k. Home or Place of Residence. Most Cited Cases

Although search of drug defendant's home by state and federal officers, pursuant to warrant issued by Tennessee judicial commissioner, violated federal rule providing that only federal magistrate judges or state court judges could issue search warrants, exclusion of evidence obtained in search was not appropriate, inasmuch as search was conducted pursuant to valid state warrant and thus was "reasonable" in constitutional sense, and officers had more than probable cause. U.S.C.A. Const.Amend. 4; West's T.C.A. §§ 40- 5-102, 40-6-10; Fed.Rules Cr.Proc.Rule 41(a), 18 U.S.C.A.
**\*621** On Appeal from the United States District Court for the Eastern District of Tennessee.

Before BOGGS and COLE, Circuit Judges, and BATTANI, District Judge. [FN\*]

FN\* The Honorable Marianne O. Battani, United States District Judge for the Eastern District of Michigan sitting by designation.


PER CURIAM.
Before the court is an appeal arising out of Appellant Jeffrey Hopper's conviction for drug-trafficking offenses. In the proceedings below, Appellant made four motions to suppress the Government's evidence on Fourth Amendment grounds, all of which were denied. Specifically, Appellant moved to suppress all articles and evidence found in the search of his residence based on the following four grounds: 1) the police's initial arrival onto his property was an illegal trespass; 2) the search followed an illegal seizure of his wife, and was conducted without her consent before arrival of a warrant; 3) the search warrant was based on an affidavit containing false statements and illegally obtained information; and 4) the police obtained the warrant from a judicial commissioner who was unauthorized to issue warrants. Appellant now appeals the denial of those motions. We **AFFIRM.**
## I. Factual Background
A. The Initial Presence on Appellant's Property
As of the summer of 1999, federal law enforcement had begun suspecting Appellant and his associate William Secker of conducting marijuana-growing operations in their homes. On Sept. 1, 1999, federal and state officers executed a search warrant on the Secker residence in Tallassee, Tennessee, and found a large amount of marijuana-growing paraphernalia. Several officers then went to the Hopper residence for consent to search Appellant's house. When the officers turned into the Appellant's driveway, they drove past three "No Trespassing" signs. Officers claimed not to have noticed the signs. The officers knocked on the front and back doors but no one responded. Under the raised deck behind Appellant's house, officers observed PVC pipe and styrofoam insulation boarding with reflective tape on it, similar to materials found in use at the Secker residence to grow marijuana.
B. The Contact with Appellant's Wife and Subsequent Search of the House
Finding no response at Appellant's house, officers returned to the Secker residence. That afternoon, officers stopped a red Chevrolet Blazer that approached the Secker residence, but then turned around in a neighbor's driveway to leave. Vickie Hopper, Appellant's wife, was driving, while her friend and two children were passengers. The occupants of the car all testified that the officers approached their vehicle with their guns drawn. The officers denied this, claiming that they only **\*622** had their hands on their weapons in accordance with normal police procedure, and the district court accepted the officers' version of the story. An officer asked Mrs. Hopper to exit the vehicle, then read her the *Miranda* warnings. Mrs. Hopper was informed that her husband's name and residence had come up during a drug investigation, and that the officers wished to speak with him pursuant to that investigation. The officers maintain that Mrs. Hopper voluntarily agreed to return to Appellant's house with them, while Mrs. Hopper alleges that the officers gave her no choice but to go. Once again, the district court accepted the officers' story over

Mrs. Hopper's.

En route to the Hopper residence, the officers asked Mrs. Hopper if her husband had any weapons in the house. She confirmed that Appellant had several weapons inside, and also carried a weapon in his pocket. The police then asked Mrs. Hopper if she would allow officers to do a protective sweep of the residence, to which Mrs. Hopper agreed. During the sweep, the officers found weapons and smelled marijuana, and then asked Mrs. Hopper to consent to a full search of the house. Mrs. Hopper, on the advice of her attorney, refused to give her consent, and asked the officers to leave. The officers exited the house but remained on the property to secure it while waiting for a search warrant. Furthermore, to protect against the potential destruction of evidence before arrival of the warrant, the police prevented Mrs. Hopper from reentering her house unaccompanied by an officer. An hour later, before the police had actually left to get the warrant, Mrs. Hopper changed her mind and verbally consented to the search. The police informed her that she would need to sign a written consent form, which she did. After signing the form, Mrs. Hopper unlocked the outside door to the basement. During the search, however, Mrs. Hopper withdrew consent to search her house, so the officers stopped searching and sent an officer to get a warrant. The officers waited outside until the warrant arrived. The officers then finished their search, and found a marijuana-growing operation, including 350 marijuana plants, numerous other items related to a marijuana growing operation, numerous weapons, and $2640.

C. Proceedings Below

Appellant was charged in May 2000 with growing and possessing marijuana plants, and possessing firearms in furtherance of his drug trafficking scheme. In October 2000, Appellant's counsel filed four motions to suppress evidence found in the search of the Hopper residence. In March 2001, in the United States District Court for the Eastern District of Tennessee, a federal grand jury returned a three-count Superseding Indictment against Appellant, charging him with (I) manufacturing in excess of 100 marijuana plants, (II) possessing, with the intent to distribute, more than 100 marijuana plants, and (III) possessing, using, and carrying firearms during and in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). In April 2001, United States District Judge Leon Jordan denied all of Appellant's motions to suppress evidence. Shortly thereafter, Appellant pled guilty to Count I, and was sentenced to 60 months imprisonment. Appellant's plea agreement, however, reserved the right to appeal the denial of the motions to suppress.

## II. Discussion

When reviewing decisions on motions to suppress, Courts of Appeal will uphold the factual findings of the district court unless clearly erroneous, legal conclusions will be reviewed *de novo,* and the evidence must be reviewed in the light most likely to *623 support the district court's decision. United States v. Hurst, 228 F.3d 751, 756 (6th Cir.2000).

A. The "Illegal Trespass" Claim

Appellant's first motion to suppress evidence alleged that the officers' observation of PVC pipe and styrofoam insulation was the product of an illegal trespass onto his property. Specifically, Appellant contends that the officers' entry onto his property, without a warrant and in spite of two "No Trespassing" signs, was illegal. Appellee responds that the mere presence of "No Trespassing" signs does not make the officers' entry onto the curtilage of Appellant's property an improper search, because law enforcement officers may encroach upon the curtilage of a home for the purpose of asking questions of the occupants.

The Fourth Amendment protects the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. U.S. Const. amend. IV. The touchstone of Fourth Amendment analysis is whether a person has a constitutionally protected, reasonable expectation of privacy. Katz v. United States, 389 U.S. 347, 360, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Therefore, the officers' "trespass" was only relevant in a Fourth Amendment sense if it invaded Appellant's reasonable expectation of privacy. United States v. Jackson, 585 F.2d 653, 659-60 (1978). Under

certain circumstances, Fourth Amendment protection does extend to the "curtilage" of a home, defined as the area outside the house which harbors the "intimate activity associated with the sanctity of a man's home and the privacies of his life." *Oliver v. United States,* 466 U.S. 170, 180-81, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984). Specifically, an area's status as protected curtilage depends on consideration of four factors: 1) the proximity of the area claimed to be the curtilage to the home; 2) whether the area is included within an enclosure surrounding the home; 3) the nature of the uses to which the area is put; and 4) the steps taken by the resident to protect the area from observation by people passing by. *United States v. Dunn,* 480 U.S. 294, 300, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987).

[1] [2] Under this four-factor test, the police did not violate Appellant's Fourth Amendment rights with respect to his curtilage. The "No Trespassing" signs, the purported outside boundary of the curtilage, were within visual distance of the Hopper home. Appellant's home, however, was not enclosed. Furthermore, Appellant makes no argument that the area where the "No Trespassing" signs were posted was put to any special use. Fourth and finally, Appellant took no special measures to protect the area from open observation. Moreover, even if Appellant's curtilage had enjoyed constitutional protection, the actions of the police in this case would not have violated the Fourth Amendment because law enforcement officials may encroach upon the curtilage of a home for the purpose of asking questions of the occupants. *United States v. Hammett,* 236 F.3d 1054,1059 (9th Cir.2001). Furthermore, if the front and back of a residence are readily accessible from a place, like a driveway or parking area, the Fourth Amendment is not implicated where officers go to the back door reasonably believing it is used as a principal entrance to the dwelling. *United States v. Freeman,* 426 F.2d 1351, 1352-53 (9th Cir.1970). Similarly, if the front door is inaccessible, there is nothing unlawful or unreasonable about going to the back of the house to look for another door, all as part of a legitimate attempt to interview **\*624** the person. *United States v. Daoust,* 916 F.2d 757, 758 (1st Cir.1990).

Appellant attempts to rely on three different cases in support of his argument. First, he cites *United States v. Depew,* 8 F.3d 1424, 1427-28 (9th Cir.1993), for the proposition that the "No Trespassing" signs made encroachment onto his curtilage presumptively unreasonable. In *Depew,* however, the defendant not only posted "No Trespassing" signs, but took several additional measures in a comprehensive effort to protect the area from outside interference. *Id.* at 1428. Specifically, "Depew chose the residence at issue because it was in a remote, secluded area. It was not visible from the highway below due to the long driveway, a row of thick trees blocking the view, and the lower elevation of the highway. Depew had a post office box in town and read his own meter so that no postal worker or meter reader came to his premises." *Id.* Thus, *Depew* is clearly distinguishable from the instant case, where Appellant did not take any other measures to protect his curtilage.

Appellant also relies on *United States v. Haddix,* 239 F.3d 766, 767 (6th Cir.2001), and *United States v. Morgan,* 743 F.2d 1158, 1162-63 (6th Cir.1984), for the proposition that a warrantless entry onto a defendant's property violates the Fourth Amendment absent exigent circumstances. These cases are inapplicable because Appellant did not have a Fourth Amendment privacy interest in the area he claims as his curtilage. Consequently, there was no need to show exigent circumstances. In conclusion, the district court properly denied Appellant's first motion to suppress.

B. The "Illegal Seizure" Claim

Appellant's second motion to suppress alleges that the search of his house was the product of the illegal seizure and/or arrest of his wife. In particular, Appellant argues that Mrs. Hopper was illegally seized at the Secker residence, illegally detained and transported against her will to her residence, and that her consent to search the house was involuntary. Appellant further argues that even if the consent was voluntary, it could not cure the unlawful seizure. Appellee responds that 1) Appellant lacks standing to seek

suppression of evidence based on Mrs. Hopper's alleged illegal stop and detention; 2) a *Terry* stop of Mrs. Hopper was warranted because her approach to, and sudden hasty retreat from, the Secker residence provided reasonable suspicion that she had some connection to the Secker property; and 3) Mrs. Hopper's admission that Appellant had weapons in the house and on his person gave officers probable cause to conduct a protective sweep of the premises.

[3] Appellee is correct that Appellant cannot suppress evidence based on the purportedly illegal seizure of his wife, a third party. Fourth Amendment rights are personal rights that, like some other constitutional rights, may not be vicariously asserted. *Jones v. United States*, 362 U.S. 257, 261-62, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). In other words, suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. *United States v. Padilla*, 508 U.S. 77, 81, 113 S.Ct. 1936, 123 L.Ed.2d 635 (1993). Thus, it is unnecessary for this court to consider whether the police stop of Mrs. Hopper's car was a Fourth Amendment violation.

[4] The court does, however, consider and reject Appellant's argument that the police did not have valid consent to sweep and search his house. Appellee alleges that Mrs. Hopper was ordered to get into **\*625** the police car at gunpoint, denied an opportunity to gather her purse, speak to her children or friend, or follow the officers in her own vehicle, and that under these circumstances her consent for a sweep of the house was not voluntary. These factual assertions from Appellant were rejected by the district court in favor of contradictory testimony from the police. The district court's choice to believe the testimony of the officers on these points was not clearly erroneous, and under those facts, Mrs. Hopper's consent to accompany the officers, and later to the protective sweep, was voluntary. In short, because Appellant has no standing to challenge the police's stop of Mrs. Hopper, and because the sweep of his home was conducted with Mrs. Hopper's voluntary consent, the district court properly denied Appellant's second motion to suppress evidence.

C. The "Faulty Affidavit" Claim

Appellant's third motion to suppress alleged two fatal infirmities in the affidavit underlying the search warrant. Appellant first argues that the judicial commissioner would not have issued the search warrant if the affidavit had revealed the following facts: 1) the officers twice ignored two "No Trespassing" signs; 2) Ms. Hopper was illegally stopped and taken to her residence against her will; 3) Ms. Hopper was held captive for two hours without her consent; and 4) the officers' knowledge of PVC pipe, styrofoam, and the marijuana-growing operation itself were illegally obtained. Second, he argues that the affidavit supporting the search warrant did not provide probable cause because it lacked any reference to the basis of knowledge of the informant.

Appellant cites *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), presumably to show that the basis of knowledge of an informant supplying hearsay information is a general requirement in testing the sufficiency of an informant's information. Appellee responds that corroborated confidential informant testimony may be relied upon as a substantial basis for issuing a search warrant, see *United States v. Brown*, 147 F.3d 477 (6th Cir.1998), and that the information contained in the affidavit, including the items found in plain view outside Appellant's home, provided more than the substantial basis necessary to conclude that probable cause existed. *Gates*, 462 U.S. at 238-39.

In *Gates*, the Supreme Court established that a warrant must be upheld as long as the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing. *Id.* at 236. Courts should pay great deference to the determinations of probable cause made by a magistrate, whose judgment "should not be set aside unless arbitrarily exercised." *United States v. Pelham*, 801 F.2d 875, 877 (6th Cir.1986). The

task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Gates*, 462 U.S. at 238. While an informant's "veracity," "reliability," and "basis of knowledge" are all highly relevant in determining the value of his report, these elements should not be understood as entirely separate and independent requirements to be rigidly exacted in every case. *Id.* at 230. Rather, they should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is probable cause to believe that contraband or evidence is located in a particular place. *Id.*

**\*626** [5] [6] Appellant's first complaint about the affidavit fails because none of the omitted information was relevant to a determination of probable cause. As explained above, the initial "trespass" onto the Hopper property and the sweep of the Hopper residence were all permissible under the Fourth Amendment and therefore would not have undermined the finding of probable cause if included in the affidavit. Appellant's second issue with the affidavit similarly lacks merit because the *Gates* test is satisfied in the instant case. The affidavit documented a reliable confidential informant who told police that Appellant and Secker were conspiring to manufacture marijuana at their residences. Furthermore, officers observed marijuana equipment when they went to Appellant's residence to interview him, and found an indoor growing operation in the Hopper house after Mrs. Hopper's consent to search. The absence of any reference to the basis of knowledge of the informant is excused, under the totality of the circumstances, by the officers' first-hand encounters, and Appellant's arguments that the affidavit was defective therefore fail. [FN2]

FN2. Because the court finds that the affidavit provided sufficient probable cause for a search warrant, it does not consider whether the officers acted on the warrant in good faith pursuant to *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

D. The "Judicial Commissioner" Claim

Fourth and finally, Appellant Hopper contends that the judicial commissioner in this case lacked authorization to issue the search warrant, specifically because under Fed.R.Crim.P. 41(a) and 41(c), only federal magistrate judges or state court judges--not judicial commissioners--are authorized to issue a federal search warrant. *See Byars v. United States*, 273 U.S. 28, 47, 47 S.Ct. 248, 71 L.Ed. 520 (1927). Appellee responds that the search of the Hopper residence was purely a state search, that under Tennessee law judicial commissioners are magistrates authorized to issue state search warrants. Tenn.Code Ann. §§ 40-5-102(3) and 40-6-105.

In relevant part, Fed.R.Crim.P. 41(a) states that "[u]pon the request of a federal law enforcement officer or an attorney for the government, a search warrant authorized by this rule may be issued (1) by a federal magistrate judge, or a state court of record within the federal district, for a search of property or for a person within the district and (2) by a federal magistrate judge for a search of property or for a person either within or outside the district if the property or person is within the district when the warrant is sought but might move outside the district before the warrant is executed."

[7] Federal, not state, law governs the validity of a search warrant in a federal criminal proceeding. *United States v. Shields*, 978 F.2d 943, 945 (6th Cir.1992). Rule 41, however, only applies to federal law enforcement endeavors, not to warrants for state investigations. *United States v. Bennett*, 170 F.3d 632, 635 (6th Cir.1999). The states may develop their own workable rules governing arrests, searches and seizures, even if

those rules do not comport with the Federal Rules, as long as the state rules do not violate constitutional dictates. United States v. Searp, 586 F.2d 1117, 1121 (6th Cir.1978). The key inquiry here, then, is whether the search of Appellant's house was a federal search implicating Rule 41, or merely a state search to which Rule 41 would not apply.

Under Searp, the search in this case counts as a federal search. In Searp, the FBI and Kentucky police jointly undertook an investigation into several bank robberies, which were simultaneously state and federal crimes. Id. at 1121. The Searp court held that as federal agents were ***627** substantially involved in the search, the search was federal, and that in such a case "*the fact that the search is also a state search cannot affect the federal agents' duty to comply with the federal rules.*" Id. (emphasis added). See also United States v. Twenty-Two Thousand, Two-Hundred and Eighty Seven Dollars ($22,287.00), United States Currency, 709 F.2d 442, 447 (6th Cir.1983) (finding that Rule 41(c) applied where a warrant and affidavit were sworn out on state forms and obtained by a state police officer, but a federal agent was involved in the investigation and participated in the search). Similarly, here federal officers were also conducting a federal investigation, with the help of state officers, for use in a federal prosecution. Appellee maintains that because a state officer obtained the search warrant from a state magistrate, the search warrant was a state search warrant excluded from the requirements of Rule 41(a). The federal agents were clearly substantially involved with the obtaining of the warrant, however, so Searp's participation doctrine applies here: when a federal officer has participated in an official capacity, his or her conduct, and thus the legality of the search, is to be judged by federal standards, including Rule 41. Searp, 586 F.2d at 1121.

The search here clearly violated the mandates of Rule 41. While Tenn.Code Ann. § 40-5-102 and Tenn.Code Ann. § 40-6-10 authorize judicial commissioners to issue state search warrants, United States v. Finch, 998 F.2d 349, 351 (6th Cir.1993), judicial commissioners are neither federal magistrates nor a state court of record, and so lack authority to issue federal search warrants. United States v. Elkins, 732 F.2d 1280, 1286 (6th Cir.1984). For the foregoing reasons, and contrary to the findings of the district court, the search of the Hopper residence was a federal search that both triggered and violated Rule 41.

[8] The inquiry does not end here, however. The use of the exclusionary rule to remedy statutory violations is a discretionary matter. Searp, 586 F.2d at 1123. Because, by their very nature, the Rules of Procedure blend constitutional limitations on police activity, procedural limitations designed to avoid constitutional violations, and purely administrative "housekeeping" rules, the remedies for noncompliance must vary accordingly. Id. at 1124. In cases such as this one, in which a joint search has been conducted by both state and federal officers, relying on a state search warrant, the Sixth Circuit has adopted two general guidelines regarding application of the exclusionary rule. First, this court has dictated a threshold standard that the exclusionary rule should not even be considered unless the federal officers have violated a "Rule-embodied policy designed to protect the integrity of the federal courts or to govern the conduct of federal officers." Id. at 1124. Once this threshold standard has been met, violations of Rule 41 alone still should not lead to exclusion unless 1) there was prejudice in the sense that the search might not have occurred or would not have been so intrusive if the Rule had been followed, or 2) there is evidence of intentional and deliberate disregard of a provision of the rule. Id. at 1125.

Although this court has not yet addressed the particular issue before it today, other federal courts have made it clear that the "federal magistrates" and "court of record" requirements of Rule 41(a) are Rule-based policies designed to protect the integrity of the federal courts. See, e.g., United States v. Passero, 385 F.Supp. 654 (D.Mass.1974); United States v. Perez, 375 F.Supp. 332 (W.D.Tex.1974). Thus this court must proceed to the two-prong test for exclusion of evidence. With respect to the first prong, although

the police failed to comply with the procedural ***628** requirements of Rule 41(a), the search was nevertheless "reasonable" in the constitutional sense, because it was conducted pursuant to a valid state warrant and met the requirements of the Fourth Amendment. Moreover, it is difficult to imagine the violation in question either to have unduly prejudiced the Appellant, or to be one of bad faith by the officers. Officers discovered the marijuana-growing operation prior to seeking the search warrant, and as such had more than probable cause. Thus, neither of the two *Searp* justifications for exclusion has been satisfied, and so the fourth motion to suppress should also have been denied. *Id.* at 1125.

### III. Conclusion

For the reasons stated above, we AFFIRM the judgment of the District Court denying Appellant's motions to suppress.
C.A.6 (Tenn.),2003.
U.S. v. Hopper
58 Fed.Appx. 619

### Briefs and Other Related Documents (Back to top)

- 01-5811 (Docket) (Jun. 28, 2001)

END OF DOCUMENT

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), I certify that I am an employee of the law offices of Woodburn and Wedge, 6100 Neil Road, Suite 500, Reno, Nevada 89511, and that I served the foregoing document described as Points and Authorities of Current Owners in Opposition to Motion for Protective Order, on the parties set forth below by:

__X__   Placing an original or true copy thereof in a sealed envelope placed for collection and mailing in the United States Mail, at Reno, Nevada, postage prepaid, following ordinary business practices.

addressed as follows:

Kenneth D. Johnson, Esq.
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, DC  20530

Greg Addington, Esq.
United States Attorney
100 W. Liberty St., Ste. 600
Reno, NV  89501

Brian M. McMahon, Esq.
Hamilton & McMahon, Ltd.
P. O. Box 40638
Reno, NV  89504-4638

Thomas W. Chaffee, Esq.
Pandell Law Firm, Inc.
1990 North California Blvd., Suite 1010
Walnut Creek, CA  94596

Daniel T. Hayward, Esq.
Laxalt & Nomura, Ltd.
9600 Gateway Dr.
Reno, NV  89521

Christopher Brancart, Esq.
Brancart & Brancart
8205 Pescadero Road
Loma Mar, CA  94021

1
2
3  R. Shawn Oliphant, Esq.
   Lane, Fahendorf, Viloria & Oliphant
   P. O. Box 3677
   Reno, NV  89505

4
5  Harold B. Thompson, Esq.
   Georgeson, Thompson & Angaran, Chtd.
6  100 W. Grove Street, Suite 500
   Reno, NV  89509

7  William E. Peterson, Esq.
8  Morris, Pickering & Peterson
   6100 Neil Road, Suite 555
9  Reno, NV  89511

10 Nicholas B. Salerno, Esq.
11 Lincoln, Gustafson & Cercos
   1120 Town Center Drive, Suite 260
12 Las Vegas, NV  89114

13 Gilbert Orosco
   1762 Baldwin Lane
14 Stockton, CA  95215

15
   Gene J. Stonebarger, Esq.
16 Lindsay & Stonebarger
   Forum Building
17 1107 9th Street, Suite 1020
   Sacramento, CA  95814
18

19 Gloria J. Sturman, Esq.
   Wilson, Elser, Moskowitz, Edelman & Dicker LLP
20 415 S. Sixth Street, Suite 300
   Las Vegas, NV  89101
21

22 Keith D. Kaufman
   Robinson & Wood, Inc.
23 1645 Village Center Circle, Suite 271
   Las Vegas, NV  89134
24
                Dated this 1st day of November, 2005.
25

26
                                          _____
27                                         Jill Nichol

28