1

**UNITED STATES DISTRICT COURT**

2

**DISTRICT OF NEVADA**

3

4   UNITED STATES OF AMERICA,    )    3:04-CV-0292-LRH (VPC)
                                 )    consolidated with

5                                  )    3:04-CV-0397-ECR (VPC)
            Plaintiffs,       )

6                                  )

7      vs.                        )    **REPORT AND RECOMMENDATION**
                             )    **OF U.S. MAGISTRATE JUDGE**

8   SHARLANDS TERRACE, LLC, *et al.*,   )
                               )    May 12, 2009

9              Defendants.     )
   _____)

10                                 )
   AND RELATED CLAIMS         )

11     _____)

12         This report and recommendation is made to the Honorable Larry R. Hicks, United States

13  District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28

14  U.S.C. § 636(b)(1)(B) and LR IB 1-4.

15         Before the court is the proposed remedial plan of James Tibbens d/b/a San Joaquin Design

16  Group, Sharlands Terrace LLC, Jeff Codega Planning and Design, Inc., Blatt Development of

17  Nevada, Inc., and Michael T. Blatt ("D/C defendants") (#362); the Windgate Apartments LP;

18  1930 Wright Street LLC; 5311 College Oak Drive LLC; 3859 Annadale Lane LLC; Sharlands

19  Terrace Apartments I, LLC; and Sharlands Terrace Apartments II, LLC ("current owners")

20  response to the design/construction defendants' remedial plan (#365); the United States response

21  to the design/construction defendants' proposed remedial plan (#364); Silver State Fair Housing

22  Council and Paul Babiak's joinder to the United States response (#366); the design/construction

23  defendants' joint reply (#367); the joint supplemental report (#374); and the current owners'

24  supplemental response (#375).

25  **I.**    <u>**Procedural History**</u>

26         Sharlands Terrace Apartments ("property") is an apartment complex first occupied in

27  1991.  In 2004, the United States filed this action and alleged violations of the Fair Housing Act

28  ("FHA"), 42 U.S.C. § 3601 *et seq.,* based upon allegedly discriminatory design and construction

1    of the apartment complex. On October 1, 2008, the District Court issued its order granting in part

2    and denying in part the motion of plaintiff, the United States, for partial summary judgment

3    (#357).  The District Court found liability under the FHA and ordered that defendants, James

4    Tibbens d/b/a San Joaquin Design Group, Sharlands Terrace LLC, Jeff Codega Planning and

5    Design, Inc., Blatt Development of Nevada, Inc., and Michael T. Blatt ("D/C defendants"),

6    submit a remedial plan within forty-five days of the Court's order to eliminate the discriminatory

7    conditions.  *Id.* Thereafter, the United States had thirty days in which to respond. *Id.*   On

8    November 14, 2008, the D/C defendants filed their notice of submission of proposed remediation

9    plan and notice of manual filing (#s 362 & 363). The United States responded (#364), and

10   plaintiffs, Silver State Fair Housing Council, Inc., and Paul Babiak, joined in the United States'

11   response (#366).

12         Defendants Windgate Apartments LP; 1930 Wright Street LLC; 5311 College Oak Drive

13   LLC; 3859 Annadale Lane LLC; Sharlands Terrace Apartments I, LLC; and Sharlands Terrace

14   Apartments II, LLC ("current owners") moved to clarify the District Court's October 1, 2008

15   order to allow the current owner defendants an opportunity to offer comments concerning the

16   remedial plan (# 358).  The current owners were joined as necessary parties, but are not subject

17   to FHA liability, nor are they responsible for remediation of the FHA violations.  The District

18   Court denied the current owners' requests for clarification as moot, as it deemed the request

19   unnecessary, and indicated it would consider their concerns in fashioning equitable relief (#371).

20   Current owners had earlier filed their response to the D/C defendants' remedial plan (#365), and

21   the D/C defendants replied (#367).

22         This court reviewed the papers file by the parties and then directed the D/C defendants

23   to meet with the United States' expert to determine whether the current owners' proposed changes

24   to the remedial plan were acceptable (#373).  The court ordered the United States and the D/C

25   defendants to submit a report concerning agreed upon changes to the remedial plan, which they

26   did (# 374).  The current owners were given leave to file a supplemental response, and they have

27   done so (#375).

28

The court must now approve the remedial plan pursuant to its equitable authority and the FHA, which allows the court to "award such preventive relief, including a permanent or temporary injunction, restraining order, or other order against the person responsible for a violation of this subchapter as is necessary to enjoy assure the full enjoyment of the rights granted by this subchapter." 42 U.S.C. § 3614(d)(1)(A).  The court is mindful that the current owners are necessary parties, but are not subject to liability.  As such, they may be "subjected to such minor an ancillary provisions of an injunctive order as the District Court might find necessary to grant complete relief . . . from the discrimination . . . suffered . . . ."  *General Bldg. Contractors Assoc. v. Pennsylvania,* 458 U.S. 375, 399 (1982).  Despite the objections of affected parties who are not liable for the violations, the FHA allows the court to order relief, but to tailor such injunctive relief so that it "should be no more burdensome to the defendant than necessary to provide complete relief to plaintiffs." *Zepeda v. U.S. Immigration and Naturalization Serv.,* 753 F.2d 719, 729 n. 1 (9th Cir 1984) *quoting Califano v. Yamasaki,* 442 U.S. 682, 702 (1979).

## II.    The Proposed Remediation Plan

For ease of reference, the court will address the current owners' responses and objections to the proposed remediation plan in the order set forth in their response (#365), but will also refer to the proposed plan itself (#362).

### A.     Selection of a Contractor (#362 at para. 18)

Paragraph 18: All retrofits required by this Proposed Remediation Plan shall be conducted by a licensed, insured general contractor that is independent to any of the parties to this litigation.

The D/C defendants are required to bring the property into compliance with the FHA, and they, their insurers, or both will pay for the remediation.  The D/C defendants have an obvious interest in hiring a contractor who will properly complete the remediation, and they will answer to the court if they do not.  Although the current owners assert that they "have a clear right to approve the selection of the contractor," they cite no provision in the FHA that establishes such a right. The D/C defendants shall have leave to contract with contractor of their choice to

3

1   complete the remediation, The dispute resolution mechanism in the remediation plan will address

2   any disputes that may arise.

3       **B.    AIA Construction Contract: Proposed Remediation Plan (#362 at page 7, n. 2)**

4

5   Page 7, n. 2:   All retrofits undertaken by the Design/Construction Defendants shall be completed by a General Contractor retained by the Design/Construction Defendants, pursuant to a written Construction Contract. The contracts entered into with the General Contractor to complete the work required by this Decree shall require the General Contractor's activities at the subject property to comply with the requirements of this Remedial Plan.

6

7

8       The current owners propose that the court require the D/C defendants to enter into a

9   "standard form AIA contract," naming the current owners as third party beneficiaries of the

10  contract.  The current owner defendants do not define the term "standard form AIA contract."

11  The court finds no basis for the current owners to dictate the form of the construction contract,

12  nor have they demonstrated any legal basis for insisting that they be named as third party

13  beneficiaries to the contract.  Moreover, the court notes that the D/C defendants previously

14  entered into a remediation contract with Bison Construction, a copy of which they provided the

15  current owners in October 2006.  A new contract will be necessarily be prepared, the D/C

16  defendants represent that they intend it will contain provisions similar to the 2006 contract, and

17  the contractor will be required to comply with the terms of the remediation plan.  The D/C

18  defendants represent to the court that this form of construction contract represents the terms that

19  they will generally agree to include in a future contract. The court agrees with this approach and

20  finds that it complies with the intent of the remediation plan.

21      **C.    Contractor's Insurance: Proposed Remediation Plan (#362 at para. 18)**

22      The current owners wish to approve the scope of the contractor's insurance and to be

23  named as an additional insured on the contractor's policies.  As the D/C defendants correctly note,

24  the nature and extent of insurance required for the remediation will be determined after the

25  remediation plan is approved.  The court anticipates that the D/C defendants will obtain a

26  standard policy of general liability insurance.

27

28

4

**D.      Payment and Performance Bonds: Proposed Addition to Remediation Plan**

Current owners ask that the D/C defendants secure performance and payment bonds to insure the job is completed after work begins and that all contractors are paid to avoid mechanics liens.  Instead, the D/C defendants propose that construction funds be deposited in an escrow account with a third party who will be responsible for construction cost disbursement.  This proposal eliminates the need for a payment bond.  D/C defendants also contend that a performance bond is unnecessary, as the remediation plan requires the D/C defendants to remediate the property.  The court agrees that a third-party escrow fund addresses the current owners' concerns about payments to contractors and sub-contractors and that a performance bond is unnecessary, since the court will oversee compliance with the remediation plan.

**E.      Building Permits: Not Specified in Proposed Remediation Plan**

The current owners note that the proposed remediation plan is silent regarding the necessity of building permits, and the D/C defendants agree that building permits will necessarily be required.  The court agrees; therefore, the proposed remediation plan will be amended to include a requirement that the D/C defendants obtain necessary building permits.

**F.      Project Funding: Proposed Remediation Plan (#362 at para. 16)**

Paragraph 16 of the proposed remediation plan identifies those features of the ground-floor apartments and common use areas of the property that are in violation of the FHA, and it allocates responsibility for remediation of the defects based upon the original scope of work (#362, para. 16 & Appendix A).  The proposed remediation plan also provides that the D/C defendants agree to fund their respective allocations of the remedial work, but reserve the right to argue one is not jointly liable for the other in the event one of the D/C defendants fails to provide adequate funding for its share of the remediation.  However, neither the current owners nor plaintiffs waive their right to argue that the D/C defendants are jointly liable to provide the funding to complete all necessary remediation of the project.

The current owners propose – and the D/C defendants agree – to the following:

(a) The Court will first resolve issues regarding the selection of the contractor, the construction contract, and the nature and scope of the remedial project (discussed below), so that

5

1    the contractor will be in a position to estimate the cost to perform
2    the remediation work based on its contractual obligations and the
     nature and scope of the work to be performed.

3    (b) The contractor will then enter into a contract to perform
     all of the work specified in the remediation plan approved by the
4    Court, including an appropriate amount for contingencies.

5    (c) The D/C defendants will then deposit, prior to the
     commencement of construction, the total contract amount into an
6    account to be controlled *by the court* or other third party to be
     distributed in accordance with approved contract procedures.

7
     The court agrees, and paragraph 16 of the proposed remediation plan will amended to
8
     include this provision.  However, the court will not control the construction account; therefore,
9
     the italicized provision noted above is not adopted and will be deleted.
10
          **G.    Neutral Inspector and Quality Control: Proposed Remediation Plan(#362 at
11                 paragraphs 19-25)**

12        The proposed remediation plan proposes that the D/C defendants contract with a neutral

13   inspector to conduct on-site inspections to determine whether retrofits have been completed in

14   conformity with Appendix A, the accessibility modifications.  The provisions governing the

15   responsibilities of the neutral inspector provide a timetable for such inspections, notice to all

16   parties of the results of inspections, notice to all parties of any deficiencies in the retrofits, and

17   a procedure for correct of any deficiencies. *Id.* at para. 23.  Upon the neutral inspector's

18   certification that the retrofits have been satisfactorily completed, the D/C defendants shall be

19   released from further obligations under the proposed remedial plan unless any party objects

20   within ten days of receiving the report.  *Id.*  The parties are then required to meet and confer in

21   an effort to resolve the dispute, and if they cannot, the issue shall be subject to the dispute

22   resolution procedures outlined in the proposed remediation plan.  *Id.* at para. 24.  It is the D/C

23   defendants' obligation to pay the neutral inspector's costs and fees. *Id.* at para. 25.

24        The current owners do not object to the neutral inspector, but ask the court to include a

25   provision in the proposed remediation plan to allow them to employ their own inspector to

26   observe and monitor the remediation project and to allow them to reserve the right to seek

27   reimbursement for the cost of their inspector upon completion of the project.  In addition, the

28   current owners' inspector would have the right to notify the contractor of deficiencies in materials

6

1  or workmanship and to present change orders to the contractor.

2      The D/C defendants contend that this proposal is duplicative of the neutral inspector's role

3  and that allowing yet another inspector to present change orders to the contractor is outside the

4  scope of the proposed remediation plan.  The court agrees.  The D/C defendants are required to

5  complete the construction pursuant to the proposed remediation plan.  The neutral inspector will

6  oversee and approve retrofits as they are completed, and in the event the current owners have a

7  dispute about a particular issue, there is a dispute resolution mechanism in place to resolve that

8  concern.  If the current owners wish to employ another inspector of their choosing, they certainly

9  may do so, but the court will not include reimbursement of the inspector as part of the proposed

10  remediation plan.  To the extent the current owner wish to seek reimbursement of such costs as

11  consequential damages, they have leave to do so.

12      **H.    Nature and Scope of Proposed Repairs**

13      The District Court found that FHA violations exist at the property and ordered the D/C

14  defendants to submit a remedial plan.  The current owners ask that even if the plaintiffs and D/C

15  defendants agree on the scope of repair, it must be subject to the current owners' express

16  approval. The court rejects this request, as current owners cite no legal basis for the current

17  owners to condition remediation on their express approval. Similarly, the court will not grant the

18  current owners authority to approve all new plans or plan changes if the plans must be revised as

19  a result of building permit applications. The court anticipates that *all* parties involved in this

20  remediation will engage in good faith to respond to concerns and suggestions that may, as a

21  practical matter, effectuate the remediation of the property.  Should disputes arise, the parties may

22  resort to the dispute resolution provisions of the proposed remediation plan.   Once the

23  remediation is completed, the court further anticipates that the plaintiffs will release the current

24  owners from future liability with respect to FHA accessibility requirements.

25      **I.    Compensation for Potential Losses Current Owners May Sustain
       (#362 at para. 37)**

26

27  Paragraph 37 of the proposed remediation plan concerns the costs of litigation and states:

28      The United States and the Design/Construction Defendants shall
       bear their own costs and attorney's fees associated with this

litigation. The Current Owner Defendants claim a right to recover their fees and costs from the Design/Construction Defendants. The Design/Construction Defendants dispute this claim. Nothing herein precludes or establishes any claims by the Current Owner Defendants or the Design/Construction Defendants against each other for prevailing party attorney's fees. By reason of the Proposed Remedial Plan, no party to this action shall be deemed a prevailing party with respect to the Current Owners' claims, or any other claims between the parties to the action.

Thus, the proposed remediation plan is silent concerning compensation for losses or damages arising from the remediation. The current owners anticipate they may sustain losses and damages as a result the remediation and ask the court to retain jurisdiction to address these issues. They also request leave to submit interim applications for compensation and/or indemnity during the remediation period. This court has already ruled that the current owners are not aggrieved parties under the FHA, and it specifically prohibited the current owners from amending their complaint to include allegations that they are aggrieved parties under the FHA (#314). The current owners' claims are for breach of contract and for negligence, which the D/C defendants dispute. The court will retain jurisdiction of the current owners' claims for future damages, subject to the Federal Rules of Civil Procedure. As for current owners' request for interim compensation and/or indemnity during the remediation, the court agrees with the D/C defendants that current owners must plead and prove their alleged damages, subject to applicable substantive law and procedural rules. The court will not enter such interim awards.

## J.    Court's Retention of Jurisdiction

The United States originally proposed that the court retain jurisdiction over the remediation plan until six months after the neutral inspector certifies that all retrofits have been completed, which would provide any party an opportunity to seeks relief if it believes there is a violation of the remediation plan (#364). Thereafter, the United States and the D/C defendants agreed that the court should retain jurisdiction over the plan for thirty days after the date the neutral inspector certifies that all retrofits have been completed (#374). The court agrees that this time limit is reasonable and only governs the time line for retention of jurisdiction concerning the completion and certification of the remedial plan. It does not limit the court's jurisdiction to resolve claims or defenses that remain thereafter.

1   The court now turns to specific objections regarding design and construction details of the

2   proposed remediation plan.

3   **K.    Exterior Issues**

4       *1.     Standard Details and Plans for Curb Ramps (#362, Appendix A,*
        *Sections 2.3, 3.1.4, 3.1.5, 3.1.8, and 3.3)*

5   A current owners' request, the D/C defendants agree to provide standard details or plans,

6   as necessary, regarding the curb ramps, which must be installed to complete an accessible route

7   through the property.  They will also provide standard details or plans, as necessary, regarding

8   the existing curb ramps, which must be remediated.  The proposed remediation plan will be

9   amended accordingly.

10      *2.     Installation of a Railing for New Concrete Sidewalk Entrances*
        *In Front of Buildings H, J, and L*

11

12      The D/C defendants agree with current owners' proposal that a railing be installed where

13  the new concrete sidewalk exceeds the height allowable by code, and the railing shall be

14  constructed in the same materials and painted in the same fashion as the existing stair railings on

15  the property. The proposed remediation plan shall be amended accordingly.

16      *3.     Retrofits (#362, Appendix A,  Sections 3.1.3, 3.1.9(b) and (c), and 3.6)*

17      The current owners request additional plans for the above-referenced items to be

18  retrofitted.  Plaintiffs and D/C defendants agree that the locations and specifications for these

19  remediations are adequately described, and the court agrees.  There will be no revisions to

20  proposed remediation plan concerning these items.

21      *4.     Cross-Slope Regarding Building A (#362, Appendix A, Section 3.3)*

22      The plaintiffs and D/C defendants agree to current owners' request to correct the cross-

23  slope on the detail regarding the front of Building A to reflect an allowable cross-slope of 2%,

24  not 5%.  Therefore, the detail in 3.3 in front of Building A shall be revised so that the allowable

25  cross slope should be reduced from 5% to 2%.

26      *5.     Transition Ramps in Front of Buildings A, B, C, F, K, P, R, T, and V*

27      The current owners ask that plans be revised to provide for transition ramps throughout

28  the property, including in front of Buildings A, B, C, F,  K, P, R, T and V.  Because the D/C

9

1   defendants and plaintiffs agree that the proposed remediation of the various building entrances

2   complies with the FHA, the court will not require these transition ramps.

3            **6.      General Notes for Exterior Remediation**

4        The D/C defendants agree with the current owners' request that "general notes" be added

5   regarding remediation of the exterior as follows:

6            a)   All work shall be completed in a quality and workmanlike
                  manner in strict compliance with all existing laws,
7                 regulations, ordinances and codes.

8            b)   All areas of works shall be completed so as to minimize
                  visual appearance of any "patch work."
9

10           c)   All work shall be performed to the same quality and style
                  as the existing improvements.

11           d)   All work shall be done in accordance with all
                  manufacturers' recommendations.
12

13           e)   The work shall not unnecessarily interfere with the
                  operations of the apartment complex.

14  **L.     Interior Issues**

15           **1.      Interior Drawings and Plans**

16       The current owners note that repairs for interior retrofits are described in unsigned

17  drawings or sketches prepared by an unknown designer.  The current owners presume that new

18  plans will be submitted and further note that undated, unsigned, unstamped plans cannot be used

19  to obtain a building permit.  D/C defendants respond that the contractor selected to perform the

20  retrofit will submit the plans; therefore, new plans will not be required.  Furthermore, D/C

21  defendants advise the court that in other FHA remediation projects in northern Nevada, plans

22  such as current owners propose were unnecessary; rather, an appendix similar to Appendix A to

23  the proposed remediation plan sufficed.  Based on these representations, the interior plans, as

24  amended by a final order of this court and incorporated into the proposed remediation plan, will

25  serve as the operative document for the remediation.

26           **2.      Wall Reinforcing for Grab Bars Around Bathtubs**

27       The plaintiffs, D/C defendants, and the current owners agree to a revision of the proposed

28  remediation plan to provide for wall reinforcement for grab bars around bathtubs as follows:

1
2
3

> Replace bathing module with unit that has flat back in the areas where reinforcing is specified. During replacement of the bathing module, verify that grab bar reinforcing has been installed per FHA requirements. If missing, add grab bar reinforcing on left, back, and right sides of the shower.

4 Consistent with this change, the court strikes Plan 10 from Exhibit 1 (#362-3; *see* Appendix A,

5 §§ 4.1.4, 4.2.4, 4.3.4, 4.4.4, 4.5.4. and 4.5.5(g) and Plan 10 in Exhibit 1, "Option One – Typical

6 Grab Bar Installation at Existing Tub Surround Backwall."

7
### 3.    *Sonoma Plan – Accessible Sink Base*

8 Having reviewed the current owners' proposal concerning an accessible kitchen sink base,

9 the plaintiffs and D/C defendants are in agreement with the proposed remediation plan (#362-3,

10 p. 3 of 33).  The court adopts the remediation plan as proposed, but agrees with current owners

11 that option two should be stricken.  Option two provides, "The owners will accept a lump sum

12 payment for the flooring to be added under each sink. It shall then be the owners' responsibility

13 to install the flooring under the accessible sink base and match the existing flooring."  *Id.*

14
### 4.    *Sonoma Plan – Entry Door Handles*

15 The court agrees with current owners that new compliant door lever handles to be installed

16 shall match the existing handles and shall be equal to the quality of the existing door handles.

17
### 5.    *Re-Use of the Existing Lavatories*

18 The current owners initially noted that the proposal to offset lavatories in affected

19 apartments was acceptable, provided the existing lavatory is used.  Plaintiffs and D/C defendants

20 agreed to this request, when possible.  However, in their most recent supplemental response,

21 current owners now take the view that re-using the existing lavatories would be problematic and

22 withdraw that request.  Therefore, the court concludes that the bath lavatory retrofits in all

23 affected units stands as set forth in the proposed remediation plan.

24
### 6.    *Sliding Door – Inadequate Opening*

25 The current owners contend that the sliding door does not open to a full 32" as required

26 by the FHA and stated:

27
28

> It is proposed that the rubber stopper be "removed" to prevent the banging of the door into the handle or the wall be removed to allow the door to fully open and provide the required opening. The

1
2
3
4
5

problem with removal is that the rubber bumper is designed to prevent the sliding door from hitting the latch or handle mechanism, bang the wall or both. If the sliding door hits the latch or handle mechanism or bangs the wall, a person's hand could be pinched between the two. So the rubber bumper is essential not only for safe operation but also to avoid increased maintenance. The Owners propose that the rubber bumper be "cut down to the required width to all the 32" opening, and then replaced so that the door can operate safely.

6    (#365).  The plaintiffs and D/C defendants agree to this proposal, but only when "necessary and

7    feasible" (#374, p. 3).  The court agrees with current owners that since the sliding doors are all

8    standard doors with the same dimensions, the same remedy should apply to all sliding doors;

9    therefore, the court adopts the current owners' proposal as to the remediation of the sliding door

10   opening.

11                    **7.      Light Switches, Etc.**

12           The current owners raised a concerns that light switches, outlets and environmental

13   controls be located at a specified height in each retrofitted unit (#365, p. 17).  Plaintiffs and D/C

14   defendants appear to agree with this proposal, but their response is somewhat vague: "[T]he D/C

15   defendants will establish the correct height range for control, *i.e.,* between 15 and 48 inches above

16   the floor" (#374, p. 3).  The court surmises that the parties all agree that light switches and

17   thermostats shall be installed at a uniform height of 48 inches, and electrical outlets shall be

18   installed at a uniform height of 15 inches.

19                    **8.      Del Mar Unit: Replacement of Existing Master Bedroom Cabinet**

20           The parties agree that the existing master bathroom lavatory cabinet will be replaced with

21   a new, FHA-compliant cabinet with matching finishes.

22                    **9.      Roll-In Shower**

23           The current owners request additional information concerning the specifications for the

24   roll-in shower that plaintiffs and D/C defendants.  In addition, they are concerned that dimensions

25   of the shower and the proposed installation may not work.  Plaintiffs and D/C defendants did not

26   respond to this issue, other than to make the general statement that they are in "complete

27   agreement on the terms of the proposed Remedial Plan" other than those identified in their joint

28   supplemental report (#374).  The current owners' request for manufacturer specifications for the

1   roll-in shower and for its installation are reasonable, and the court anticipates that once the
2   information is provided, this issue will be resolved.

3                    ***10.    Other Drawings***

4           The current owners discuss various rooms in the recreation building and appear to accept
5   the proposed retrofits (#365, p. 20).

6                    ***11.    Remaining Disputes***

7           The current owners note that they take issue with the D/C defendants' reply (#367) and
8   request leave to respond.  Having reviewed the papers filed herein, this court is satisfied that it
9   has considered and addressed issues in dispute, and no further briefing is necessary.

10   **III.    Conclusion and Recommendation**

11          The parties are advised:

12          1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice,
13   the parties may file specific written objections to this report and recommendation within ten days
14   of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and
15   Recommendation" and should be accompanied by points and authorities for consideration by the
16   District Court.

17          2.    This report and recommendation is not an appealable order and any notice of appeal
18   pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's
19   judgment.

20          This court recommends the proposed remediation plan (#362) be **ADOPTED with the**
21   **following amendments and/or findings:**

22          1.    The D/C defendants shall have leave to contract with a contractor of their choice
23                to complete the proposed remediation, and the dispute resolution provisions
24                contained in the plan with resolve disputes that may arise.

25          2.    The D/C defendants shall have leave to enter into a construction contract that is
26                similar to the 2006 contract with Bison Construction, and that contractor will be
27                required to comply with the terms of the remediation plan.

28          3.    Upon approval of the proposed remediation plan, the D/C defendants will obtain

                                          13

1   a standard policy of general liability insurance, which shall not be subject to the

2   current owners' approval, nor shall D/C defendants be required to be named as

3   additional insureds under the insurance policy.

4       4.    Upon approval of the remediation plan, the D/C defendants shall establish an

5   escrow account with a third party (not the court) who will be responsible for

6   construction cost disbursement, which will eliminate the need for payment and

7   performance bonds;

8       5.    The proposed remediation plan will be amended to require that the D/C

9   defendants obtain necessary building permits to effectuate the proposed

10   remediation.

11       6.    Paragraph 16 of the proposed remediation plan concerning project funding will

12   be amended to provide as follows:

13       (a) The Court will first resolve issues regarding the
selection of the contractor, the construction contract, and the

14   nature and scope of the remedial project (discussed below), so that
the contractor will be in a position to estimate the cost to perform

15   the remediation work based on its contractual obligations and the
nature and scope of the work to be performed.

16

17       (b) The contractor will then enter into a contract to perform
all of the work specified in the remediation plan approved by the
Court, including an appropriate amount for contingencies.

18

19       (c) The D/C defendants will then deposit, prior to the
commencement of construction, the total contract amount into an
account to be controlled by a third party to be distributed in

20   accordance with approved contract procedures.

21       7.    The current owners have leave to employ their own inspector to observe and

22   monitor the remediation project, but they do not have the right to seek

23   reimbursement from the D/C defendants for this expense at the completion of the

24   project, nor will such an inspector have the right to present change orders to the

25   approved contractor.

26       8.    The proposed remediation plan shall not be amended to provide that even if the

27   plaintiffs and the D/C defendants agree on the scope of repairs, such approval is

28   subject to the current owners' express approval; however, once the remediation

1    is completed, the court anticipates that the plaintiffs will release current owners

2    from future liability with respect to FHA accessibility requirements.

3    9.    The court will retain jurisdiction of the current owners' claims for future damages,

4          subject to the Federal Rules of Civil Procedure.

5    10.   The court will not amend the proposed remediation plan to include a provision for

6          an award of interim compensation and/or indemnity during the remediation

7          period.

8    11.   The court will retain jurisdiction over the remediation plan for thirty days after the

9          date the neutral inspector certifies that all retrofits have been completed, but this

10         shall not limit the court's jurisdiction to resolve the parties' remaining claims or

11         defenses.

12   12.   The proposed remediation plan will be amended to provide standard details or

13         plans, as necessary, regarding the curb ramps, which must be installed to complete

14         an accessible route through the property.  The proposed remediation plan will also

15         provide standard details or plans, as necessary, regarding existing curb ramps,

16         which must be remediated  (#362, appendix A, Sections 2.3, 3.1.4, 3.1.5, 3.1.8

17         and 3.3).

18   13.   The proposed remediation plan shall be amended to provide that as to new

19         concrete sidewalk entrances in front of Buildings H, J, and L, a railing will be

20         installed where the new concrete sidewalk exceeds the height allowable by code,

21         and the railing shall be constructed in the same materials and painted in the same

22         fashion ass the existing stair railings on the property.

23   14.   There will be no revisions to the proposed remediation plan concerning retrofits

24         for items identified in Sections 3.1.3, 3.1,9.b and c. and 3.6 of Appendix A

25         (#362).

26   15.   The proposed remedial plan will be revised to correct the cross-slope on the detail

27         regarding the front of Building A to reflect abn allowable cross-slope of 2%, not

28         5%.  This will require revision of the details in Section 3.3 of Appendix A (#362);

16.     The proposed remediation plan will not be revised to provides for transition ramps throughout the property, including in front of Buildings A, B, C, F, K, P, R, T, and V, since the plaintiffs and D/C defendants agree that the proposed remediation of building entrances complies with the FHA.

17.     The "general notes" shall be added regarding remediation of the exterior as follows:

a)      All work shall be completed in a quality and workmanlike manners in strict compliance with all existing laws, regulations, ordinances and codes.

b)      All areas of works shall be completed so as to minimize visual appearance of any "patch work."

c)      All work shall be performed to the same quality and style as the existing improvements.

d)      All work shall be done in accordance with all manufacturers' recommendations.

e)      The work shall not unnecessarily interfere with the operations of the apartment complex.

18.     The contractor selected to perform the retrofit will submit drawings and plans for interior remediation; therefore, interior plans, amended by this court's final order and incorporated into the proposed remediation plan, will serve as the operative documents for the interior remediation.

19.     The proposed remediation plan will be revised to provide for wall reinforcement for grab bars around bathtubs as follows:

Replace bathing module with unit that has flat back in the areas where reinforcing is specified. During replacement of the bathing module, verify that grab bar reinforcing has been installed per FHA requirements. If missing, add grab bar reinforcing on left, back, and right sides of the shower.

Consistent with this change, the court strikes Plan 10 from Exhibit 1 (#362-3; *see* Appendix A, Sections 4.1.4, 4.2.4, 4.3.4, 4.4.4, 4.5.4. and 4.5.5(g) and Plan 10 in Exhibit 1, "Option One – Typical Grab Bar Installation at Existing Tub Surround Backwall").

20.  With respect to the accessibility of the sink base in the Sonoma Pan, the court adopts proposed remediation plan, but strikes option two, which states, "The owners will accept a lump sum payment for the flooring to be added under each sink. It shall then be the owners' responsibility to install the flooring under the accessible sink base and match the existing flooring."

21.  With regard to entry door handles for the Sonoma Plan, new compliant door lever handles to be installed shall match the existing handles and shall be equal to the quality of the existing door handles.

22.  The bath lavatory retrofits in all affected units stands as set forth in the proposed remediation plan.

23.  With regard to affected sliding doors, the rubber bumper shall be cut down to the required width for all of the 32-inch openings, and then replaced so that the door can operation safely.

24.  In each retrofitted unit, light switches and thermostats shall be installed at a uniform height of 48 inches, and electrical outlets shall be installed at a uniform height of 15 inches.

25.  The master bathroom lavatory cabinet in the Del Mar unit will be replaced with a new, FHA-compliant cabinet with matching finishes.

26.  The D/C defendants shall provide current owners with manufacturer specifications for the roll-in shower and for its installation.

**DATED:** May 12, 2009.

Valerie P. Cooke

_____
**UNITED STATES MAGISTRATE JUDGE**