UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | 3:04-CV-0292-LRH (VPC) |
| Plaintiff, ) | |
| ) | **ORDER** |
| vs. ) | |
| SHARLANDS TERRACE, LLC, et al., ) | |
| Defendants. ) | |
| AND RELATED ACTIONS ) | |

Before the court is the motion of the Current Owners[1] to enforce remedial plan (#402/403). The United States opposed (#410), as did James Tibbens, d/b/a San Joaquin Design Group ("Design/Construction Defendants") (#413). Other parties filed joinders in opposition to Current Owners' motion (#s 411, 412, 414, & 415) and Current Owners replied (#416). Pursuant to the Remedial Plan, this court retains jurisdiction ro resolve disputes regarding enforcement of the Remedial Plan (#362, ¶¶ 33 &34). The court heard oral argument on July 1, 2010 (#417) and now issues this order.

**I.    Procedural History**

The Current Owners' motion concerns the requirement that an "adaptable roll-in shower" be installed in the master bathroom of the Sausalito units pursuant to the Remedial Plan (#362), as amended and approved by this court's report and recommendation (#376) and the District Court's final order (#389). The Remedial Plan specifically states: "Install a new roll in shower meeting the requirements of the Fair Housing Act to allow for forward approach to the shower controls. The roll in shower shall have a removable water dam, provide backing for future installation of grab bars and shower seat"

---

[1] The "Owners" or "Current Owners" are defendants WINDGATE APARTMENTS, LP, 1930 WRIGHT STREET, LLC, 5311 COLLEGE OAK DRIVE, LLC, 3859 ANNADALE LANE, LLC, SHARLANDS TERRACE APARTMENTS I, LLC, and SHARLANDS TERRACE APARTMENTS II, LLC.

1  (#362-2, Exhibit 1-5 - Sausalito Layout). During the process of adopting a final remedial plan, there was a dispute among the parties concerning the type of roll-in shower that ought to be installed in the Sausalito master bathroom units, and this court ultimately ordered the Design/Construction Defendants to provide Current Owners with manufacturer's specifications for the proposed roll-in shower (#376, page 17, #26).

On August 13, 2009, the Design/Construction Defendants provided the Current Owners and the United States with the manufacturer's specifications for the proposed roll-in shower, as well as the revised interior plans to match the shower (#413, Exhibit 1). This shower is called the Accessible Barrier Free Shower AP15LR6034B75B from Accessibility Professionals, inc. ("75B Shower"). Counsel for the parties exchanged a series of emails, and notwithstanding their efforts, the 75B shower was unacceptable to Current Owners (#413, Exhibits 1 & 5). The Current Owners contend that although they expressed some concerns about the 75B shower, they gave conditional approval, subject to visual inspection to verify that the appearance of the shower would be of like quality to the existing showers (#405, Flynn Decl.).

According to the Design/Construction Defendants, they ceased to be involved with the selection of an alternative roll-in shower after the Current Owners rejected the 75B model (#413). Instead, Bison Construction ("Bison"), the remediation contractor, searched for an acceptable alternative roll-in shower and selected another model from Accessibility Professionals, Inc., model APF6030BF5P.75 ("Installed Roll-In Shower"). *Id.* Dale Stephens, the neutral inspector appointed pursuant to the remedial plan ("Neutral Inspector"), tentatively approved the Installed Roll-In Shower, subject to installation, and site inspection by the Current Owners' and the Neutral Inspector. *Id.* On February 25, 2010, Current Owners' counsel, Mr. Flynn, as well as the current management agents for the apartment complex, met with the Neutral Inspector, physically inspected and approved the Installed Roll-In Shower. *Id.* On March 23, 2010, the Neutral Inspector issued a modified initial inspection report approving the remediation work, including the Installed Roll-In Shower, pursuant to Paragraph 21 of the Remedial Plan. *Id.*

Pursuant to paragraph 24 of the Remedial Plan, the Current Owners had until April 12, 2010 to object to the Neutral Inspector's certification of the Installed Roll-In Shower. The Current Owners did not object, and Bison ordered forty-seven additional Installed Roll-In showers with a purchase order containing a non-cancellation provision (#413). On April 23, 2010, the Current Owners objected to the Installed Roll-In Shower after they compared the specifications of the 75B shower with the Installed Roll-In Shower and discovered that they were not one in the same (#403). The Current Owners and the Design/Construction Defendants briefed the issue, and the Neutral Inspector concluded as follows:

1. The remediation required under Section 4.5.5 of Appendix a of the Remedial Plan to "install adaptable roll-in shower" has been met and the work of the Design/Construction Defendants is consistent with the Remedial Plan.

2. The Installed Roll-In Shower meets the requirements of the Fair Housing Act, as "shower stall in covered dwelling units may be of any size or configuration."

3. The United States and its expert concur that the Installed Roll-In Shower meets this standard.

4. The Design/Construction Defendants did provide the Current Owners with manufacturer's specifications, which the Current Owners rejected, and the Remediation Plan provided no procedure in the event of rejection.

5. Bison found another unit to address the Current Owners' concerns, installed it, and both the Neutral Inspector and Current Owners approved it after physical inspection of the shower.

6. The fact that the Current Owners did not receive the specifications for the Installed Roll-In Shower does not make it inconsistent with the Remedial Plan.

7. To address the Current Owners' concerns that the installation and construction of the Installed Roll-In Shower was not of good workmanship, the Neutral Inspector agreed to observe construction procedures and to comment on objectionable or inadequate construction practices and to insure that his recommendations are followed.

8. After the deadline had passed for Current Owners to make objections pursuant to the Remedial Plan, additional Installed Roll-In Showers were ordered based upon approvals of both the Current Owners and the Neutral Inspector.

9. The Neutral Inspector concluded that there is no reason to "change to a different showers at this time."

3

(#405-3, Exhibit C).

The Current Owners contend that: (1) the Design/Construction Defendants unilaterally substituted the Installed Roll-In Shower without the Current Owners' knowledge; (2) the Installed Roll-In Shower does not comply with the Fair Housing Act; (3) Design/Construction Defendants violated the Remedial Plan; and (4) the Installed Roll-In Shower was installed in a haphazard and defective manner (#403). They ask this court to order the Design/Construction Defendants to install the 75B showers for which specifications were provided, and to order destructive testing of a representative sample of all showers and bathtubs (#403). The Current Owners advise that if this court orders installation of the Installed Roll-In Shower in all of the Sausalito units, they will remove them and install another shower, which will result in economic waste (#416). Instead, they request that the 75B shower (or another FHA compliant shower) be installed, that the Current Owners pay that additional cost, but reserve the Current Owners' rights to later recover the additional cost from the Design/Construction Defendants (#s 403 & 416).

**II.    Discussion and Analysis**

*A.    Whether the Current Owners' Objection is Out of Time*

The Current Owners concede that they did not timely object to the Installed Roll-In Shower, but claim they were deceived into believing that the Installed Roll-In Shower was the 75B shower and objected to the alternative shower as soon as they discovered what had occurred. The underlying assumption of this argument is that the Current Owners approved the 75B Shower. They did not. Nevertheless, to the extent the Current Owners misapprehended that they had approved the shower back in February 2010 without understanding it was a different model, the court does not find their objection out of time.

*B.    Substitution of the 75B Shower with the Installed Roll-In Shower*

The court reviews *de novo* the Neutral Inspector's decision concerning the roll-in showers in the Sausalito units. Current Owners are correct that the Remedial Plan specifies that roll-in showers be installed in the master bathrooms of the Sauslito units; however, the plan does *not* specify the model of roll-in shower to be installed. After the Design/Construction Defendants filed the proposed Remedial

Plan, the parties briefed several issues concerning the plan, and this court ordered the Design/ Construction Defendants to provide the Current Owners with specifications for the roll-in shower (#376). The Design/Construction Defendants provided the specifications for the 75B roll-in shower, but the Current Owners would not approve the 75B model; therefore, the Design/Construction Defendants complied with this court's order.

The court has carefully reviewed the email exchanges between counsel for the Current Owners and the Design/Construction Defendants (#413-2, Exhibits 1, 4, & 5) and rejects the notion that the Current Owners gave conditional approval for installation of the 75B shower. It was unacceptable for the many reasons stated in the email exchanges, including the Current Owners' contention that the 75B shower was not FHA-compliant. After weeks of wrangling via email about the 75B shower, the Design/Construction Defendants gave up, and Bison undertook to find an alternative. Bison collaborated with the Neutral Inspector to find an alternative, and they agreed that the Installed Roll-In Shower would actually be installed so that everyone, including the Current Owners, could physically inspect the shower in the Sausalito unit. The Current Owners had earlier discussed the need for an inspection of an installed shower, which is what occurred. It would have been preferable had Bison provided the specifications for the Installed Roll-In Shower to the Current Owners, but the court finds that there was no intent to deceive the owners, and even if they were not given the specifications for the Installed Roll-In Shower, it was harmless error, since the installation and physical inspection of the shower gave all parties the opportunity to inspect and measure the Installed Roll-In Shower and to ask any questions.

### C.     *Whether the Installed Roll-In Shower is FHA-Compliant*

The court has reviewed the parties' arguments concerning whether the Installed Roll-In Shower is FHA-compliant, and finds that it is. It is ironic that in August 2009, Current Owners argued that the 75B shower was not FHA-compliant and rejected it, but now take the position that despite those concerns, they prefer that rejected shower to the Installed Roll-In Shower. It is inconsistent for the Current Owners to now protest that the 75B shower is preferable. In any case, the United States' expert and the Neutral Inspector both concluded that the Installed Roll-In Shower is FHA-compliant, and the court agrees for four reasons. First, the FHA supplies no compliance standard, except when the shower

stall is the only shower in the dwelling unit, which is not the case for the Sausalito unit (#410). Second, there is nothing in the FHA Guidelines that specifies any minimum-width approach for shower controls, as Current Owners' expert suggests. *Id.* Third, the court also rejects the Current Owners' contention that the disparity of the width of the showers is not within the reasonable bounds of variance to be deemed of like quality. Fourth, the shower head can be centered on the shower wall during installation to provide thirteen inches from the shower head in either direction.

### D.  *Failure to Install in a Good and Workmanlike Quality*

Current Owners next contend that installation of the Installed Roll-In Shower was not of good and workmanlike quality and request that the court order destructive testing of a representative sample of all showers and bathtubs installed by Bison to verify the work is being performed in compliance with the Remedial Plan. All parties agree that there were problems with the installation of the shower, and the Neutral Inspector has committed to additional supervision to insure these concerns are addressed. This has nothing to do with whether the Installed Roll-In Shower complies with the Remedial Plan. Bison has responded to this concern with a proposed installation procedure to address these issues, the Neutral Inspector has approved that procedure, and he has also required Bison to submit photographs to verify compliance with those procedures (#413, Exhibits 2 & 3). These additional steps should adequately address Current Owners' concerns, and the court will not order destructive testing of all showers and bathtubs in different units.

### III.  **Conclusion**

Based upon the foregoing, the court affirms the Neutral Inspector's determination concerning the Installed Roll-In Shower in all respects with the exception the Neutral Inspector found Current Owners' objection untimely. Current Owners have told the court that if the Installed Roll-In Showers are installed over their objections, they will tear them out and replace them with showers that meet the Current Owners' requirements. It is obvious that this is a waste of time and money. If the Current Owners now want to install the 75B showers, they may do so at their own expense. Because the Design/Construction Defendants complied with the Remedial Plan, the Current Owners cannot recover

any additional costs associated with tearing out the Installed Roll-In Showers, or to purchase and install a substituted shower that meets Current Owners' requirements.

Current Owners' motion to enforce remedial plan (#402/403) is **DENIED.**

IT IS SO ORDERED.

DATED: August 4, 2010.

_____
UNITED STATES MAGISTRATE JUDGE